# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *Wilkins v. Williams*, 2013 IL 114310

---

| | |
|---|---|
| Caption in Supreme Court: | KAREN WILKINS, Appellee, v. RHONDA WILLIAMS, Indiv. and as Agent of Superior Air Ground Ambulance Service, Inc., d/b/a Superior Ambulance Service, Inc., *et al.*, Appellants. |
| | |
| Docket No. | 114310 |
| | |
| Filed | June 20, 2013 |
| | |
| Held <br><br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where an ambulance driver on a nonemergency run collided with a car which turned left in front of him, he and his employer were immune, under the Emergency Medical Services Systems Act, from the other motorist's negligence action |
| | |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Lynn Marie Egan, Judge, presiding. |
| | |
| Judgment | Appellate court judgment reversed. <br> Circuit court judgment affirmed. |

Counsel on Appeal

Donohue Brown Mathewson & Smyth LLC, of Chicago (John A. Krivicich, Karen Kies DeGrand and Elizabeth C. Christen, of counsel), for appellants.

Christopher E. Lawler, of Hilbert, Lawler & Power, Ltd., of Chicago (Lynn D. Dowd, of Wheaton, of counsel), for appellee.

Craig L. Unrath, of Heyl, Royster, Voelker & Allen, of Peoria, for *amicus curiae* Illinois State Ambulance Association.

Alexander Hattimer Loftus, of Fichera & Miller, P.C., of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

Justices

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Justices Freeman, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion.

Chief Justice Kilbride dissented, with opinion.

## OPINION

¶ 1    Plaintiff, Karen Wilkins, filed a negligence claim against defendants, Rhonda Williams, individually and as agent of Superior Air Ground Ambulance Service, Inc., and Superior Air-Ground Ambulance Service, Inc. The trial court entered summary judgment in favor of defendants. On appeal, the appellate court reversed and remanded the cause for further proceedings. 2012 IL App (1st) 101805. This court allowed defendants' petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). This court also granted the motion of the Illinois State Ambulance Association to file a brief *amicus curiae* in support of defendants, and the motion of the Illinois Trial Lawyers Association to file a brief in support of plaintiff, pursuant to Illinois Supreme Court Rule 345 (Ill. S. Ct. R. 345 (eff. Sept. 20, 2010)).

¶ 2                    BACKGROUND

¶ 3    The accident at issue occurred on November 14, 2005. On that date, around 7:15 p.m., Williams, an employee of defendant Superior, was driving an ambulance westbound on 95th Street in Oak Lawn, Illinois. Williams, along with Superior employee Vernette Henderson, was transporting a patient on a nonemergency basis from Lincoln Park Hospital to a nursing home. Both Williams and Henderson were licensed emergency medical technicians (EMTs). Henderson attended to the patient while Williams drove.

¶ 4    Williams testified at her deposition that when the accident happened, she was driving

-2-

without emergency lights or sirens. Williams was driving in the farthest right lane of three lanes of flowing traffic. A semi truck was in the farthest left lane, and a Chevrolet Avalanche truck was in the middle lane. As Williams was driving westbound, plaintiff, who had been traveling eastbound, made a left hand turn across the three lanes of westbound traffic and collided with the ambulance. The semi truck obstructed Williams' view of the traffic to her immediate left going eastbound on 95th Street, so Williams did not see plaintiff's vehicle turning left across the westbound lanes until the vehicles collided. Both Williams and Henderson passed drug tests administered by Superior pursuant to standard procedure.

¶ 5    Nasir Nasir testified at his deposition that he was driving a tow truck in the middle westbound lane of 95th Street when he saw the accident. Nasir said that it was rush hour and was dark outside. Traffic was heavy, and Nasir was stopped about 12 cars back from a traffic light because the traffic was backed up. Nasir testified that traffic in the right line was moving, likely because vehicles were making right turns. Nasir saw plaintiff's car, which was traveling eastbound on 95th Street, attempting to make a left turn across the westbound lanes. Nasir said there was no left turn lane where plaintiff was turning. Nasir testified that the vehicles in the far left and middle westbound lanes let plaintiff's car go, but as plaintiff was passing the far right westbound lane, the ambulance hit her. Nasir did not believe the ambulance was speeding. Nasir did not recall seeing a semi truck stopped in the traffic. Nasir testified that the ambulance hit the front right quarter panel of plaintiff's car and turned the car around.

¶ 6    Linda Sedakis, another eyewitness, testified at her deposition that on November 14, 2005, she was driving a Chevrolet Avalanche and was driving westbound on 95th Street in the middle lane. Sedakis said that the cars in the far left and middle had stopped for plaintiff's car. Sedakis did not recall any traffic in the right westbound lane, because most drivers used the lane as a right turn lane. Sedakis saw plaintiff turn in front of her and stop for a split second before inching farther. Sedakis did not think that plaintiff could see around her Avalanche. As plaintiff proceeded to turn left, Sedakis saw the ambulance approaching, driving the speed limit, which was either 30 or 35 miles per hour. After the accident, Sedakis spoke with a police officer and told him that she did not believe the ambulance driver was at fault, nor could she blame plaintiff. Sedakis did not see a semi truck on 95th Street.

¶ 7    Officer James Pacetti of the Oak Lawn police department testified at his deposition that he investigated the accident along with officers Michael Acke and James O'Brien. The officers estimated that plaintiff was traveling at 18 miles per hour, and that the ambulance was traveling at 31 miles per hour, when the accident occurred. The speed limit on 95th Street where the accident occurred was 30 miles per hour. The officers concluded that speed was not a factor in the collision. The officers determined that the ambulance hit plaintiff's car on the passenger side, and that plaintiff then was struck in the head by the ambulance.

¶ 8    Pacetti's conclusion concerning the accident was that plaintiff made a left hand off of 95th Street across three lanes of traffic, and was hit by the ambulance in the last lane. Two lanes of traffic had stopped, letting plaintiff's vehicle go, and as plaintiff was turning, she collided with the ambulance. Because one of the stopped vehicles was a larger vehicle, neither plaintiff nor Williams likely saw one another before the crash. Pacetti did not know why the traffic in the middle and far left lanes of westbound 95th Street was stopped,

although he said that there is a traffic light about a block west of the accident site, and traffic can back up as far as the accident site. Pacetti testified that his opinion of fault was that plaintiff made a left hand turn in front of a car, and testified that plaintiff likely was ticketed for failure to yield the right of way.

¶ 9     Plaintiff testified that on the day of the accident, she was traveling eastbound on 95th Street and tried to make a left hand turn to go to a doctor's office. Plaintiff has no memory of the collision. Plaintiff remembers only that she awoke at Christ Hospital and remained there until January 2006. Plaintiff suffered brain injury from the accident and continues to receive therapy and treatment.

¶ 10    Plaintiff sued defendants for negligence. Defendants filed a motion for summary judgment based upon the immunity provisions of the Emergency Medical Services (EMS) Systems Act (EMS Act) (210 ILCS 50/3.150(a) (West 2006)). The trial court granted summary judgment in favor of defendants, finding that the EMS Act applied to bar plaintiff's claim. As noted, the appellate court reversed, holding that the immunity provided in the EMS Act does not extend to third-party negligence claims based on the ordinary operation of a motor vehicle, so that the trial court erred in granting summary judgment in favor of defendants. 2012 IL App (1st) 101805. Given its disposition of the case, the appellate court did not address plaintiff's claim that a genuine issue of material fact existed concerning whether Williams engaged in willful and wanton misconduct, which would render the immunity provisions of the EMS Act inapplicable.

¶ 11                                    ANALYSIS

¶ 12    The first issue in this appeal is whether the appellate court correctly found that the immunity provision set forth in the EMS Act did not immunize defendants from negligence with regard to third parties. This case comes before us on the trial court's grant of summary judgment. Summary judgment is proper when the pleadings, depositions, admissions and affidavits on file demonstrate that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2006). This court's review of an appellate court's order reversing a trial court's order granting summary judgment is reviewed *de novo*. *Rush University Medical Center v. Sessions*, 2012 IL 112906, ¶ 15.

¶ 13    Further, in reviewing the appellate court's order reversing summary judgment, we are called upon to construe the EMS Act. Here too, our review of a court's interpretation of a statute is *de novo*. *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 332 (2008).

¶ 14    It is well settled that the primary goal in construing a statute is to ascertain and give effect to the legislature's intent. *Abruzzo*, 231 Ill. 2d at 232. The best indication of the legislature's intent is the statutory language, given its plain and ordinary meaning. *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 11. When the statutory language is clear and unambiguous, it must be applied without resort to other aids of construction. *Abruzzo*, 231 Ill. 2d at 332.

¶ 15    The portion of the EMS Act in effect at the time of plaintiff's accident provided, in pertinent part, that:

"(a) Any person, agency or governmental body certified, licensed or authorized pursuant to this Act or rules thereunder, who in good faith provides emergency or non-emergency medical services during a Department approved training course, in the normal course of conducting their duties, or in an emergency, shall not be civilly liable as a result of their acts or omissions in providing such services unless such acts or omissions, including the bypassing of nearby hospitals or medical facilities in accordance with the protocols developed pursuant to this Act, constitute willful and wanton misconduct." 210 ILCS 50/3.150(a) (West 2006).

¶ 16    In this case, the appellate court first held that the preceding immunity provision applied to Williams' nonemergency transport of a patient to a nursing care facility. 2012 IL App (1st) 101805, ¶ 17. The parties do not challenge this holding on appeal.

¶ 17    The appellate court next noted that a proper negligence claim must allege a duty owed by the defendant, a breach of that duty, and that the breach proximately caused the plaintiff's injuries. 2012 IL App (1st) 101805, ¶ 19. The appellate court noted that the duty owed by EMTs to patients arose from the provision of emergency or nonemergency medical services, which differed from the duty that Williams owed as an ambulance driver to third-party motorists such as plaintiff. *Id*. ¶¶ 19, 20. Accordingly, the appellate court stated that it had to ascertain whether the negligence contemplated by section 3.150(a) included negligence toward third parties. *Id*. ¶ 20.

¶ 18    The appellate court concluded that the EMS Act was silent, and therefore ambiguous, concerning whether the negligence contemplated by section 3.150(a) included negligence toward third parties based upon the ordinary operation of a motor vehicle. *Id*. ¶ 21. The appellate court noted that sections 11-205 and 11-907 of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11-205, 11-907 (West 2006)) specifically addressed the duty of emergency vehicle operators toward other motorists. 2012 IL App (1st) 101805, ¶ 22. The appellate court further observed that both sections of the Vehicle Code showed that the legislature intended that, even in the emergency operation of an authorized vehicle, the driver of the authorized vehicle must maintain a due regard for the safety of other motorists. *Id*.

¶ 19    Presuming that the legislature intended for two or more statutes relating to one subject to be operative and harmonious, the appellate court concluded that in order to give full effect to the Vehicle Code, the EMS Act could not be read to immunize ambulance drivers from third-party claims of negligence in the ordinary operation of a motor vehicle. *Id*. ¶ 23. The appellate court held that to allow immunity to third parties would render meaningless the Vehicle Code's provisions that the driver of an authorized emergency vehicle must drive with due regard for the safety of all other drivers. *Id*. As further support for its holding, the appellate court noted that when the legislature wanted to immunize the negligent operation of a motor vehicle, it clearly expressed its intent in the statute, pointing to section 5-106 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-101 *et seq*. (West 2006)), which expressly referenced the negligent operation of a motor vehicle in its immunity provision. 2012 IL App (1st) 101805, ¶ 24. The appellate court therefore reversed the grant of summary judgment in favor of defendants.

¶ 20    At the outset, we find that the appellate court erred in concluding that section 3.150(a)

of the EMS Act is silent concerning negligence toward third parties. Contrary to the appellate court's interpretation, section 3.150(a) does not limit the statutory immunity set forth therein only to patients in the ambulance. Rather, the plain language of the statute clearly provides, in pertinent part, that "[a]ny person *** who in good faith provides *** non-emergency medical services *** in the normal course of conducting their duties *** *shall not be civilly liable as a result of their acts or omissions in providing such services* unless such acts or omissions *** constitute willful and wanton misconduct." (Emphasis added.) 210 ILCS 50/3.150(a) (West 2006). Section 3.150(a) does not limit, in any way, the types of plaintiffs to which the immunity applies. Nor does the language define or limit act or omission. Rather, the statute broadly declares that a person shall not be civilly liable as a result of their acts or omissions in providing nonemergency medical services.

¶ 21    Here, there is no dispute that Williams was providing nonemergency medical services in the normal course of conducting her duties when the accident with plaintiff occurred. Nonemergency medical services includes the transportation of a patient to a nursing care facility. The accident at issue was an act that occurred during the nonemergency medical service of transporting a patient. Pursuant to the plain language of the statute, then, Williams shall not be civilly liable as a result of her act or omission in providing such nonemergency medical services unless that act or omission constitutes willful and wanton misconduct.

¶ 22    The appellate court, however, read a limitation into section 3.150(a) that would limit the statutory immunity only to patients. The appellate court found that third parties were excluded from section 3.150(a) immunity. In doing so, however, the appellate court read an exception into the statute that does not exist. There is no rule of construction that authorizes a court to declare that the legislature did not mean what the plain language of the statute imports. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 83 (1994). Where a statutory enactment is clear and unambiguous, a court is not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations or conditions that the legislature did not express. *Solich*, 158 Ill. 2d at 83. Section 3.150(a) does not distinguish between patients and third parties for purposes of immunity from negligence. Section 3.150(a) does not limit statutory immunity only to patients. Consequently, the appellate court erred in reading such a limitation into the statute.

¶ 23    Plaintiff and her *amici* also argue that the statute is limited to patients, because the term "such services" in the phrase "their acts or omissions in providing such services" refers back to nonemergency medical services and, thus, limits liability to the patient receiving the nonemergency medical services. Again, however, the statute is not so limited, and instead broadly states that a person shall not be civilly liable for their acts or omissions in providing such services, without limiting or placing conditions on those acts or omissions. The immunity set forth in section 3.150(a) looks to the *nature* of the services rendered, and not to the *recipient* of those services. Had the legislature intended to limit the statute as suggested by plaintiff, it could have provided that a person shall not be civilly liable *to the patient*. The legislature has not so limited the statute, therefore, we will not read such a limitation into the statute.

¶ 24    In an analogous situation, the appellate court declined to allow recovery for contribution, finding that the counterplaintiffs' claim for contribution was barred by the EMS Act. *Brock*

*v. Anderson Road Associates*, 301 Ill. App. 3d 168 (1998). In *Brock*, the decedent died of a heat-related illness while working for the counterplaintiffs, Anderson Road Associates and James Construction Corporation. *Id*. at 170. The counterdefendants, the Wauconda fire department and emergency medical technicians, had been sued for negligence and willful and wanton conduct relating to the death, while counterplaintiffs were sued for breach of duty to provide a safe workplace. *Id*. The negligence claims against the fire department and the EMTs were dismissed based upon their immunity under the EMS Act, and the willful and wanton claims were dismissed for insufficient evidence. *Id*. Thereafter, the counterplaintiffs filed a claim for contribution against the fire department and the EMTs. *Id*. The trial court dismissed the counterclaim for contribution with prejudice. *Id*.

¶ 25    The appellate court affirmed the trial court's order dismissing the contribution claims with prejudice. *Brock*, 301 Ill. App. 3d 168. The appellate court held:

> "We believe that the policy considerations supporting immunity pursuant to the EMS Act outweigh those supporting the right to contribution. We are not persuaded by [counterplaintiffs'] argument that allowing a right to contribution would not defeat the purpose of the EMS Act. The threat of impending liability either in tort or by way of contribution is detrimental to the ability of medical personnel to effectively perform their duties. Medical personnel work under extreme circumstances and must be able to make life-saving decisions. Allowing a third party to maintain a contribution action would not only impede the EMTs' ability to render effective medical care, but it would also deter many from entering this profession and working under such circumstances. ***
>
> In addition to these policy considerations, the implications of allowing recovery for contribution, but not in tort, are simply illogical. [Citations.] Permitting a third party, but not a plaintiff, to recover from another defendant would afford the third party a wider basis for recovery. [Citation.] For example, a third party could then recover for negligence, while a plaintiff would be limited to recovery for willful and wanton conduct. [Citation.] As the fire department and EMTs assert, this result is 'nonsensical.' " *Id.* at 174.

¶ 26    We find the concerns expressed in *Brock* to be well-taken and equally applicable to the instant case. Allowing a third party to recover for negligence against defendants for acts or omissions in providing nonemergency medical services, while limiting the ambulance patient's recovery to willful and wanton conduct, is equally nonsensical. As defendants point out, ambulances transporting patients on an emergency or nonemergency basis may have medical personnel or patient's family members in the ambulance with the patient. Under the appellate court's analysis, third parties such as medical personnel or family members would have a greater right of recovery against the defendants than the patient for the same act or omission in providing the nonemergency medical services. As in *Brock*, allowing such recovery is illogical.

¶ 27    In addition, the concerns underlying the EMS Act apply equally to third parties as well as patients. Plaintiff characterizes the EMS Act solely as a protection against professional liability claims filed by patients. The EMS Act, however, is not so limited.

¶ 28 The express intent of the EMS Act is to:

> "provide the State with systems for emergency medical services by establishing within the State Department of Public Health a central authority responsible for the coordination and integration of all activities within the State concerning pre-hospital and inter-hospital emergency medical services, as well as non-emergency medical transports, and the overall planning, evaluation, and regulation of pre-hospital emergency medical services systems." 210 ILCS 50/2 (West 2006).

¶ 29 The court in *Abruzzo* recognized the broad scope of the EMS Act, observing that with recent amendments, "[t]he EMS Act continues to regulate expansively the delivery of emergency medical services in Illinois." *Abruzzo*, 231 Ill. 2d at 339. To that end, the EMS Act's "provisions are directed at accomplishing the broad purpose of planning, delivering, evaluating, and regulating emergency medical services." *Id*. *Abruzzo* concluded:

> "our review of the EMS Act reveals that it is a comprehensive, omnibus source of rules governing the planning, delivery, evaluation, and regulation of emergency medical services in Illinois. Our broad construction of the immunity provision in *American National Bank* to include preparatory conduct integral to providing emergency treatment continues to be supported by the EMS Act's comprehensive scope." *Id.* at 341.

Further, the EMS Act's immunity provision "has been interpreted broadly to include preparatory actions integral to providing emergency treatment." *Id.* at 345.

¶ 30 Given the broad scope of the EMS Act, as well as the broad language in the immunity provision, we disagree with plaintiff's characterization of the Act as solely a protection against professional liability claims filed by the patient in the ambulance. The language of the statute is broad enough to include other plaintiffs negligently injured by an act or omission resulting from the provision of emergency or nonemergency medical services.

¶ 31 Having found that the appellate court erred in limiting the section 3.150(a) immunity only to patients, we next must consider whether the appellate court properly found that in order to give full effect to the Vehicle Code, section 3.150(a) of the EMS Act cannot be read to immunize ambulance drivers from third-party claims of negligence in the ordinary operation of a motor vehicle.

¶ 32 Section 11-907 of the Vehicle Code provides, in pertinent part:

> "(a) Upon the immediate approach of an authorized emergency vehicle making use of audible and visual signals meeting the requirements of this Code or a police vehicle properly and lawfully making use of an audible or visual signal,
>
> > (1) the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the highway clear of any intersection and shall, if necessary to permit the safe passage of the emergency vehicle, stop and remain in such position until the authorized emergency vehicle has passed, unless otherwise directed by a police officer ***[.]" 625 ILCS 5/11-907(a)(1) (West 2006).

¶ 33 Subsection (b) of section 11-907 then provides that "[t]his Section shall not operate to

relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway." 625 ILCS 5/11-907(b) (West 2006).

¶ 34    Section 11-205 of the Vehicle Code likewise provides public officers and employees driving an authorized emergency vehicle with exceptions to the Vehicle Code, but states that "[t]he foregoing provisions do not relieve the driver of an authorized emergency vehicle from the duty of driving with due regard for the safety of all persons, nor do such provisions protect the driver from the consequences of his reckless disregard for the safety of others." 625 ILCS 5/11-205(e) (West 2006).

¶ 35    The appellate court relied on sections 11-907 and 11-205 to find that the EMS Act could not be read to immunize ambulance drivers from third-party claims of negligence in the ordinary operation of a motor vehicle. The appellate court concluded that to allow immunity under the EMS Act "would render meaningless the Vehicle Code's provisions that the driver of an authorized emergency vehicle must drive with due regard for the safety of all other drivers." 2012 IL App (1st) 101805, ¶ 23.

¶ 36    We first note that section 11-205 does not apply here, as it pertains to public officers and employees, while defendants are a private ambulance service and its employee. Plaintiff argues that section 11-205 applies to private ambulances and drivers, citing *Lanning v. Harris*, 342 Ill. App. 3d 965 (2003), *Young v. Forgas*, 308 Ill. App. 3d 553 (1999), and *Carter v. Du Page County Sheriff*, 304 Ill. App. 3d 443 (1999). Those cases, however, each involved public, not private, employees. Moreover, the cases did not hold that section 11-205 applied to private employees. The references in those cases to private employees appear in discussions citing both section 11-205 and 11-907, where the courts observed that the Vehicle Code provides certain privileges to both public and private employees. See *Lanning*, 342 Ill. App. 3d at 967; *Young*, 308 Ill. App. 3d at 560; *Carter*, 304 Ill. App. 3d at 448. Section 11-907 does apply to private employees.

¶ 37    Although section 11-907 does apply to private employees, that section is not directly on point, because that section addresses authorized emergency vehicles driving with lights and sirens. Williams was not operating the ambulance with lights and sirens at the time of the accident. As plaintiff argues, however, if the Vehicle Code controls and does not provide immunity to ambulances operating with lights and siren, defendants should not be able to claim immunity when they were not driving with lights and siren.

¶ 38    In addressing this issue, we find the recent decision in *Harris v. Thompson*, 2012 IL 112525, to be instructive. In *Harris*, the court considered whether the Tort Immunity Act or the Vehicle Code applied to the plaintiff's negligence claim. The defendants argued that the Tort Immunity Act applied and barred the plaintiff's negligence cause of action. *Id.* ¶ 19. The lower courts, relying on *Bradshaw v. City of Metropolis*, 293 Ill. App. 3d 389 (1997), had rejected the defendants' claim, finding that the Tort Immunity Act and the Vehicle Code were in conflict and where such conflict exists, the more specific statute, the Vehicle Code, controlled. *Id.* ¶¶ 19, 20.

¶ 39    The *Harris* court noted that the Tort Immunity Act granted only immunities and defenses, but did not create duties. *Harris*, 2012 IL 112525, ¶ 17. In contrast, sections 11-205 and 11-907 of the Vehicle Code imposed a duty on emergency vehicle drivers to refrain from

negligence. *Id.* ¶ 21. Whether a local public entity owed a duty of care, and whether that entity enjoyed immunity, were separate issues. *Id.* ¶ 17. Once a court determines whether a duty of care exists, it then addresses whether the Tort Immunity Act applies. *Id.*

¶ 40        The *Harris* court observed that, in contrast to the case before it, other appellate districts had relied on *Henrich v. Libertyville High School*, 186 Ill. 2d 381 (1998), to find that the Vehicle Code and the Tort Immunity Act each stood in its own sphere, addressing different actors under different circumstances, so that the statutes were not in conflict. *Id.* ¶ 24. *Harris* agreed with those appellate districts, holding that:

> "Sections 11-205 and 11-907 of the Vehicle Code provide certain privileges both to public and private employees who operate emergency vehicles. In contrast, the Tort Immunity Act does not apply to private employees, but provides immunity only to public employees absent willful and wanton conduct. Therefore, these sections of the Vehicle Code do not abrogate the Tort Immunity Act. [Citations.] Under the plain language of section 5-106 of the Tort Immunity Act, the legislature has chosen to grant immunity from negligence liability to public employees like [defendants]." *Id.* ¶ 25.

¶ 41        *Harris* then overruled *Bradshaw*, and held that the Tort Immunity Act controlled the disposition of plaintiff's cause of action for ordinary negligence against the defendants. *Id.* ¶¶ 25, 26.

¶ 42        The same analysis applies in this case. As in *Harris*, whether defendants owed a duty of care and whether defendants enjoyed immunity are separate issues. Section 11-907 provides certain privileges to authorized emergency vehicles, but provides that those privileges do not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway.

¶ 43        The Vehicle Code defines "Authorized emergency vehicle" as:

> "Emergency vehicles of municipal departments or public service corporations as are designated or authorized by proper local authorities; police vehicles; vehicles of the fire department; vehicles of a HazMat or technical rescue team authorized by a county board under Section 5-1127 of the Counties Code; ambulances; vehicles of the Illinois Emergency Management Agency; and vehicles of the Illinois Department of Public Health." 625 ILCS 5/1-105 (West 2006).

¶ 44        The reach of the EMS Act is narrower than section 11-907, as the EMS Act does not apply to every "Authorized emergency vehicle" set forth in section 11-907. Rather, the EMS Act applies only to "[a]ny person, agency or governmental body certified, licensed or authorized pursuant to this Act or rules thereunder, who in good faith provides emergency or non-emergency medical services *** in the normal course of conducting their duties, or in an emergency ***." 210 ILCS 50/3.150(a) (West 2006).

¶ 45        Under the plain language of section 3.150(a), the legislature has chosen to grant immunity from civil liability, except for willful and wanton conduct, to those set forth therein. As in *Harris*, section 11-907 of the Vehicle Code does not abrogate section 3.150(a) of the EMS Act. Moreover, the duty set forth in section 11-907 continues to apply under the EMS Act for purposes of willful and wanton conduct. Nonetheless, because defendants fall

within the immunity provided for in section 3.150(a), that section of the EMS Act controls the disposition of plaintiff's cause of action for negligence against defendants.

¶ 46    Plaintiff makes an additional argument that immunity for purposes of the EMS Act is limited to ambulances operating under lights and siren. Because defendants were driving without lights or siren at the time of the accident at issue, plaintiff maintains that defendants are not entitled to immunity under the EMS Act. Plaintiff's argument repeatedly references the preferences given to ambulances operating under lights and sirens in the Vehicle Code, as set forth in sections 11-205, 11-907, as well as section 11-1421.

¶ 47    Plaintiff's reliance on section 11-1421 is unavailing. Section 11-1421 of the Vehicle Code states:

"(a) No person shall operate an ambulance or rescue vehicle in a manner not conforming to the motor vehicle laws and regulations of this State *** unless in compliance with the following conditions:

1. The person operating the ambulance shall be either responding to a bona fide emergency call or specifically directed by a licensed physician to disregard traffic laws in operating the ambulance ***;

2. The ambulance or rescue vehicle shall be equipped with a siren ***, and with a lamp or lamps ***;

3. The aforesaid siren and lamp or lamps shall be in operation at all times when it is reasonably necessary to warn pedestrians and other drivers of the approach thereof during such trip or journey;

4. Whenever the ambulance or rescue vehicle is operated at a speed in excess of 40 miles per hour, the ambulance or rescue vehicle shall be operated in complete conformance with every other motor vehicle law and regulation of this State ***; and

        ***

(b) The foregoing provisions do not relieve the driver of an ambulance or rescue vehicle from the duty of driving with due regard for the safety of all persons, nor do such provisions protect the driver from the consequences resulting from the reckless disregard for the safety of others." 625 ILCS 5/11-1421 (West 2006).

¶ 48    Plaintiff argues that section 11-1421(a)(3) demonstrates that the legislature expressly mandated that ambulances, whether on an emergency or nonemergency trip, must activate their lights or siren to warn others that they are on the roadway as conditions warrant.

¶ 49    Plaintiff's interpretation of section 11-1421 is incorrect. Section 11-1421 sets forth conditions that must be complied with when operating an ambulance or rescue vehicle in a manner not conforming to Illinois motor vehicle laws and regulations. Here, there is no evidence that defendants were operating their ambulance in a manner not conforming to the Illinois motor vehicle laws and regulations. Therefore, defendants were not required to comply with the conditions set forth in section 11-1421.

¶ 50    Even with regard to those ambulances subject to section 11-1421, the statute does not mandate that those ambulances always drive with lights and sirens on. Rather, the statute

provides that lights and sirens shall be in operation when reasonably necessary. Consequently, plaintiff's attempt to create liability for defendants based upon their failure to use lights and sirens during their nonemergency transport must fail.

¶ 51    Applying the same analysis, plaintiff asserts that defendant Williams was negligent in failing to know and adhere to the rules of the road. In support, plaintiff points to Williams' deposition testimony that she had no idea that Illinois law imposed a duty on her to activate her lights and siren for a nonemergency transport. Plaintiff argues that negligence in failing to know the rules of the road and adhering to the rules of the road has never been a basis to afford private parties immunity from liability.

¶ 52    We again point out that Illinois law did not impose a duty on Williams to activate her lights and siren for the nonemergency transport at issue. There was no rule of the road that Williams did not know or adhere to with regard to lights and sirens. Therefore, there is no merit to plaintiff's claim that Williams was negligent in failing to know and adhere to the rules of the road.

¶ 53    Likewise, plaintiff's repeated references to the preferences given to ambulances under the Vehicle Code are immaterial to this case. There is no claim or evidence that defendants were claiming any preferences in the nonemergency transport of the patient. There is no evidence or testimony in the record that defendants were operating the ambulance in a manner not conforming to the motor vehicle laws and regulations of the state. Although plaintiff states in her brief that defendants "came barreling down the outer lane of traffic," all evidence established that defendants were not speeding at the time of the accident. Defendants were not driving through stop signs or stop lights. Defendants were not parked or standing in an unauthorized zone. Defendants were not generally disregarding regulations governing direction of movement or turning. Accordingly, the fact that the Vehicle Code provides preferences for authorized emergency vehicles in certain circumstances has no bearing on the issue before us.

¶ 54    With regard to plaintiff's attempt to draw a line between ambulances operating under lights and siren and those not operating under lights and siren for purposes of section 3.150(a) immunity, we note that there is no such distinction in the statute. The statute applies to both emergency and nonemergency medical services, which include transportation. The Vehicle Code does not require an ambulance on a nonemergency transport to operate under lights and siren.

¶ 55    Because section 3.150(a) does not limit immunity to ambulances driving under lights and siren, we decline to read such a limitation into the statute. As set forth, *supra*, a court is not at liberty to depart from the plain language and meaning of a statute by reading into it exceptions, limitations or conditions that the legislature did not express. *Solich*, 158 Ill. 2d at 83. Consequently, the fact that defendants were not driving under lights and siren, and were not claiming preferences under the Vehicle Code, does not defeat their immunity under section 3.150(a).

¶ 56    Plaintiff also characterizes defendants' argument as asserting that, because their ambulance was engaged in the act of transporting a patient, defendants could be negligent and simply ignore traffic signals, road markings and street signs. Defendants, however, make

-12-

no such argument. Nor is there any evidence in the record that defendants ignored any traffic signals, road markings or street signs. The evidence showed that defendants were driving the speed limit, in a traffic lane that was moving, when the accident at issue occurred. In fact, Officer Pacetti testified that his opinion on fault was that plaintiff made a left hand turn in front of a car.

¶ 57    Plaintiff further claims that defendants' arguments mean that the Vehicle Code does not ever apply to private ambulances. Plaintiff maintains that, according to defendants' arguments, an ambulance would have no need to ever adhere to the rules of the road, by virtue of just being an ambulance engaged in any conceivable aspect of ambulance services, even simply driving to and from work.

¶ 58    This is incorrect. It is clear that section 3.150(a) immunity extends only to those providing emergency or nonemergency medical services, which would not include driving to and from work. Nor is there any claim that defendants in this case were not adhering to the rules of the road, or asserting that they were not required to adhere to the rules of the road. Moreover, an ambulance remains subject to liability for willful and wanton conduct, so that a driver cannot simply ignore motor vehicle laws with impunity.

¶ 59    The statutory language in the EMS Act is clear that any person who in good faith provides nonemergency medical services in the normal course of conducting their duties shall not be civilly liable as a result of their acts or omissions in providing such services, unless such acts or omissions constitute willful and wanton misconduct. Based upon the EMS Act, defendants are not civilly liable to plaintiff for negligence in performing the nonemergency medical services transport in this case. The trial court, therefore, properly entered summary judgment in favor of defendants on plaintiff's complaint. The appellate court erred in reversing the trial court's order.

¶ 60    In her response brief, plaintiff raises an alternative claim in the event this court finds that defendants were immune from negligence liability. Plaintiff asks this court to nonetheless reverse the grant of summary judgment in favor of defendants and remand for trial on the issue of whether defendants' conduct was willful and wanton.

¶ 61    We decline plaintiff's request to remand this cause for trial on the issue of whether defendants were willful and wanton, as plaintiff never included a count alleging willful and wanton conduct in her complaint.

¶ 62    Plaintiff filed a one-count complaint for negligence. Defendants' motion for summary judgment argued that they were entitled to judgment in their favor because they had immunity with regard to plaintiff's negligence count. Defendants' motion for summary judgment pointed out that plaintiff's complaint sounded only in negligence, but argued that even if plaintiff sought leave to amend her complaint to allege willful and wanton misconduct, there was no basis to allow such an amendment.

¶ 63    In her brief in response to defendants' motion for summary judgment, plaintiff questioned why defendants argued that their actions did not amount to willful and wanton misconduct, stating that "[s]ince neither the EMS Act nor the Tort Immunity Act applies to these facts, the number of times Defendants cite to willful and wanton, once or two dozen times, *does not alter the fact that it is not an issue*." (Emphasis added.) Plaintiff then stated

that, assuming the trial court wanted her to address that issue, there was a question of fact concerning whether defendants' conduct was willful and wanton. At oral argument on defendants' motion for summary judgment, plaintiff's counsel argued, "So I just don't think the EMS Act applies and *that's why I never filed a complaint for wilful and wanton because it's not necessary.*" (Emphasis added.) In addition, at no time did plaintiff seek leave to amend her complaint to add a willful and wanton count.

¶ 64 Because the issue of whether defendants' conduct was willful and wanton is not at issue in this case, and in fact was expressly disavowed as an issue by plaintiff's trial attorney, there is no need to reverse the grant of summary judgment in favor of defendants and remand for trial on that issue.

¶ 65                                                    CONCLUSION

¶ 66 For all the foregoing reasons, we find that the appellate court erred in reversing the trial court's order granting summary judgment in favor of defendants. We therefore reverse the appellate court's judgment, and affirm the trial court's order granting summary judgment in favor of defendants.

¶ 67 Appellate court judgment reversed.

¶ 68 Circuit court judgment affirmed.

¶ 69 CHIEF JUSTICE KILBRIDE, dissenting:

¶ 70 The majority's decision rests on this court's analysis in *Harris v. Thompson*, 2012 IL 112525. Relying on *Harris*, the majority concludes that section 11-907 of the Vehicle Code and section 3.150(a) of the EMS Act do not conflict. Instead, "whether defendants owed a duty of care and whether defendants enjoyed immunity are separate issues." *Supra* ¶ 42. The majority concludes that section 3.150(a) of the EMS Act controls and provides defendants with immunity from plaintiff's negligence claim.

¶ 71 Contrary to the majority and consistent with my position in *Harris*, I believe there is a clear conflict between section 11-907 of the Vehicle Code and section 3.150(a) of the EMS Act. Section 11-907 of the Vehicle Code requires emergency vehicle operators "to drive with due regard for the safety of all persons using the highway." 625 ILCS 5/11-907(b) (West 2006). Section 11-907, therefore, imposes a duty on emergency vehicle operators to refrain from negligence. *Harris*, 2012 IL 112525, ¶ 53 (Kilbride, C.J., dissenting). In contrast, section 3.150(a) of the EMS Act provides:

"(a) Any person, agency or governmental body certified, licensed or authorized pursuant to this Act or rules thereunder, who in good faith provides emergency or nonemergency medical services during a Department approved training course, in the normal course of conducting their duties, or in an emergency, shall not be civilly liable as a result of their acts or omissions in providing such services unless such acts or omissions, including the bypassing of nearby hospitals or medical facilities in accordance with the protocols developed pursuant to this Act, constitute willful and

-14-

wanton misconduct." 210 ILCS 50/3.150(a) (West 2006).

As explained by the majority, section 3.150(a) provides the defendants with immunity from plaintiff's claim alleging negligent operation of the ambulance.

¶ 72        Similar to *Harris*, this case presents a clear conflict between the imposition of a duty on emergency vehicle operators to refrain from negligence in section 11-907 of the Vehicle Code, and the contradictory grant of immunity from negligent operation of the ambulance in section 3.150(a) of the EMS Act. The facts of this case involve both section 11-907 of the Vehicle Code and section 3.150(a) of the EMS Act. The imposition of a duty to refrain from negligent operation of emergency vehicles in section 11-907 cannot be reconciled with the grant of immunity for the negligent operation of emergency vehicles in section 3.150(a).

¶ 73        "When a general statutory provision and a more specific one relate to the same subject, we will presume that the legislature intended the more specific statute to govern." *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 346 (2008). The Vehicle Code is more specific than the EMS Act immunity provision on the subject of operation of emergency vehicles. Section 11-907(b) of the Vehicle Code specifically imposes a duty on drivers of emergency vehicles "to drive with due regard for the safety of all persons using the highway." 625 ILCS 5/11-907(b) (West 2006). Section 11-907(b) refers explicitly to the operation of emergency vehicles and provides a standard for that operation. In contrast, section 3.150(a) generally grants immunity for acts or omissions in providing emergency or nonemergency medical services. Section 3.150(a) does not refer explicitly to emergency vehicles or give any specific direction on operating those vehicles.

¶ 74        In sum, I believe the statutory provisions in this case conflict, and section 11-907 of the Vehicle Code controls as the more specific statute governing the operation of emergency vehicles. The EMS Act immunity provision should not apply to bar plaintiff's negligence claim in this case. I would affirm the appellate court's decision reversing the trial court's grant of summary judgment in favor of defendants. Accordingly, I respectfully dissent.