# Illinois Official Reports

## Appellate Court

*Hernandez v. Lifeline Ambulance, LLC*, 2019 IL App (1st) 180696

| | |
|---|---|
| Appellate Court Caption | ROBERTO HERNANDEZ, Plaintiff-Appellant, v. LIFELINE AMBULANCE, LLC, and JOSHUA M. NICHOLAS, Individually and as an Agent and/or Employee of Lifeline Ambulance, LLC, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-18-0696 |
| Filed | February 1, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-L-2553; the Hon. Allen Price Walker, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Michael W. Kelly, of Chicago, for appellant.<br><br>Michael D. Sanders and Jonathan P. Schaefer, of Purcell & Wardrope, Chtrd., of Chicago, for appellees. |
| Panel | JUSTICE HOFFMAN delivered the judgment of the court, with opinion.<br>Justice Lampkin concurred in the judgment and opinion.<br>Justice Hall dissented, with opinion. |

**OPINION**

¶ 1      The plaintiff, Roberto Hernandez, filed the instant action seeking to recover damages for injuries he is alleged to have sustained when the vehicle he was driving was struck by an ambulance owned by Lifeline Ambulance, LLC (Lifeline), and being operated by its employee, Joshua M. Nicholas. Nicholas and Lifeline (collectively referred to as the defendants) filed a motion to dismiss both the plaintiff's complaint in the instant case (No. 2017 L 2553) and the complaint of American Access Casualty Company (American) as subrogee of the plaintiff filed against them in a consolidated action (No. 2017 M1 11458). The circuit court entered an order on March 7, 2018, granting the defendants' motion to dismiss counts I and III of the plaintiff's first amended complaint in the instant action and count I of American's amended complaint in the consolidated action. The plaintiff filed a timely notice of appeal from the dismissal of counts I and III of its first amended complaint. However, no appeal has been taken from the dismissal of count I of American's amended complaint in case 2017 M1 11458. For the reasons which follow, we reverse the judgment of the circuit court dismissing counts I and III of the plaintiff's first amended complaint and remand the matter for further proceedings.

¶ 2      In his first amended complaint, the plaintiff alleged that, on March 11, 2016, he was operating his motor vehicle in a westerly direction on Grand Avenue in Chicago when his vehicle was struck by an ambulance traveling southbound on Lake Shore Drive. The complaint alleged that the ambulance was owned by Lifeline and being operated by its employee, Nicholas. The plaintiff's first amended complaint was pled in three counts and sought damages for injuries he is alleged to have sustained as the result of the collision. Count I was a negligence claim against Nicholas, count II was a claim against Nicholas grounded in allegations of willful and wanton conduct, and count III was a claim against Lifeline predicated upon the alleged negligence of Nicholas and based upon the doctrine of *respondeat superior*.

¶ 3      The defendants filed a combined motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2016)). Subsequent to the filing of that motion, the plaintiff filed his first amended complaint. Further proceedings were conducted on the defendants' motion to dismiss with the grounds set forth therein asserted as against the claims set forth in counts I and III of the plaintiff's first amended complaint and count I of American's amended complaint in the consolidated action.

¶ 4      The defendants moved for dismissal of counts I and III of the plaintiff's first amended complaint and count I of American's amended complaint pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2016)) predicated upon the immunity provision of the Emergency Medical Services (EMS) Systems Act (EMS Act) (210 ILCS 50/3.150(a) (West 2016)). The defendants asserted that Nicholas was operating Lifeline's ambulance in the performance of non-emergency medical services at the time of the collision with the plaintiff's vehicle and, as a consequence, they are immune from civil liability unless Nicholas's acts or omissions constituted willful and wanton misconduct. The defendants' motion was supported by the affidavits of Nicholas and Eric Hagman, a Lifeline employee who was a passenger in the ambulance at the time of the collision with the plaintiff's vehicle. The affidavits state that, prior to the collision with the plaintiff's vehicle, they received a radio dispatch call from Lifeline "directing the ambulance crew to proceed to pick up a patient in the western suburbs for transport to a second location."

- 2 -

¶ 5        The plaintiff responded, arguing both that the immunity provision of the EMS Act does not apply to the operation of an ambulance until it is engaged in providing medical services to a patient and that there exists an issue of fact on the question of whether the ambulance driven by Nicholas at the time of the collision was being operated in the performance of non-emergency medical services. The plaintiff supported his response with the affidavit of Fidel Gonzalez. In his affidavit, Gonzalez averred that he witnessed the collision between the ambulance and the plaintiff's vehicle and that, following the accident, he overheard the driver of the ambulance respond to an inquiry from a firefighter stating that "he was not in service."

¶ 6        The defendants filed a reply in further support of their motion to dismiss attached to which was a second affidavit by Nicholas; the affidavit of John Herlily, "a member of Lifeline"; copies of Lifeline's time-stamped dispatch log for March 11, 2016; and a copy of the Chicago Police Department report of the accident. In his second affidavit, Nicholas averred that he was never asked whether the ambulance was "in service" at the time of the collision; rather, he was asked whether the ambulance could be driven from the scene of the accident, and he responded that "the ambulance was out of service due to the amount of damage it sustained." In his affidavit, Herlily authenticated copies of Lifeline's time-stamped dispatch log for March 11, 2016, which states that the ambulance driven by Nicholas was dispatched at 12:30:14 p.m. to pick up a patient in Villa Park, Illinois, and that following the collision with the plaintiff's vehicle, the transport was reassigned to another ambulance at 12:38:22 p.m. The Chicago Police Department report states that the collision occurred at 12:34 p.m.

¶ 7        On March 7, 2018, the circuit court entered an order, granting the defendants' section 2-619 motion and dismissed counts I and III of the plaintiff's first amended complaint and count I of American's amended complaint in the consolidated action "with prejudice." Pursuant to the plaintiff's motion, the circuit court entered an order on March 19, 2018, finding that there is no just reason for delaying appeal from the March 7, 2018, order, dismissing counts I and III of the plaintiff's first amended complaint and count I of American's amended complaint. Thereafter, the plaintiff filed a timely notice of appeal from the dismissal of counts I and III of his first amended complaint, invoking our jurisdiction pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). American did not file a notice of appeal.

¶ 8        Counts I and III of the plaintiff's first amended complaint were dismissed under section 2-619 of the Code. A section 2-619 motion to dismiss admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter defeating the plaintiff's claim. *Patrick Engineering*, *Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. The circuit court's dismissal of a complaint under section 2-619 is reviewed *de novo*. *Kedzie & 103rd Currency Exchange*, *Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993). In conducting our review, we accept as true all well-pled facts in the plaintiff's complaint and draw all reasonable inferences from those facts which are favorable to the plaintiff. *Mackereth v. G.D. Searle & Co.*, 285 Ill. App. 3d 1070, 1074 (1996). Our function is to determine "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie & 103rd Currency Exchange*, *Inc.*, 156 Ill. 2d at 116-17.

¶ 9        For his first assignment of error, the plaintiff argues, as he did before the circuit court, that the immunity provision of the EMS Act does not apply to the operation of an ambulance until it is engaged in providing medical services. He asserts that, at the time of the collision, Lifeline's

ambulance was not transporting a patient; rather, it was en route to pick up a patient located in Hillside, Illinois, for a non-emergency transport to a facility in Villa Park, Illinois.

¶ 10 The issue of whether section 3.150(a) of the EMS Act affords immunity from civil liability for negligence committed by an ambulance driver while traveling to pick up a patient for a non-emergency transport presents a question of statutory construction. The construction of a statute is also reviewed *de novo*. *Nelson v. Kendall County*, 2014 IL 116303, ¶ 22. When construing a statute, our primary objective is to ascertain and give effect to the legislature's intent, best indicated by the plain and ordinary language of the statute. *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 25. In determining the plain meaning of a statute, we consider the statute in its entirety, the subject addressed, and the apparent intent of the legislature in enacting the statute. *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009). Undefined terms in the statute must be given their ordinary and popularly understood meaning. *Gruszeczka v. Illinois Workers' Compensation Comm'n*, 2013 IL 114212, ¶ 12. In interpreting a statute, no part should be rendered meaningless or superfluous. *Hartney Fuel Oil Co.*, 2013 IL 115130, ¶ 25. We are not at liberty to depart from the plain language of a statute by reading into it exceptions, conditions, or limitations that the legislature did not express. *In re N.C.*, 2014 IL 116532, ¶ 50.

¶ 11 If the language of a statute is clear and unambiguous, it should be applied as written without resort to extrinsic aids of construction. *Poris v. Lake Holiday Property Owners Ass'n*, 2013 IL 113907, ¶ 47. If, however, the statute is ambiguous, we may consider extrinsic aids of construction to discern the legislature's intent. *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 13. A statute is ambiguous if it is subject to more than one reasonable interpretation. *Id.* ¶ 11. In construing an ambiguous statute, we may consider the consequences which would result from construing the statute in one way or another, and in doing so, we presume that the legislature did not intend to create absurd, inconvenient, or unjust results. *People v. Marshall*, 242 Ill. 2d 285, 293 (2011).

¶ 12 Section 3.150(a) of the EMS Act provides, in relevant part, as follows:

"Any person, agency or governmental body certified, licensed or authorized pursuant to this Act or rules thereunder, who in good faith provides emergency or non-emergency medical services *** in the normal course of conducting their duties *** shall not be civilly liable as a result of their acts or omissions in providing such services unless such acts or omissions *** constitute willful and wanton misconduct." 210 ILCS 50/3.150(a) (West 2016).

¶ 13 Section 3.10(g) of the EMS Act defines "Non-emergency medical services" as

"medical care *** rendered to patients whose conditions do not meet this Act's definition of emergency, *** during transportation of such patients to or from health care facilities visited for the purpose of obtaining medical or health care services which are not emergency in nature, using a vehicle regulated by this Act." 210 ILCS 50/3.10(g) (West 2016).

¶ 14 The plaintiff argues that, when read in conjunction with the definition of "non-emergency medical services" in section 3.10(g), section 3.150(a) is clear and unambiguous; namely, it affords immunity for non-emergency medical services rendered "during transportation" of a patient, but not for acts or omissions committed by the operator of an ambulance when en route to pick up a patient for a non-emergency transport.

¶ 15    Relying upon the supreme court's decision in *Wilkins v. Williams*, 2013 IL 114310, the defendants correctly assert that section 3.150(a) immunizes the operator of an ambulance from civil liability for negligence committed in the non-emergency transport of a patient. *Id.* ¶¶ 21, 59. They argue that immunity from liability for negligence applies to acts or omissions committed from the time that the ambulance is dispatched to provide non-emergency medical transportation of a patient. We believe that the defendants' reliance upon the holding in *Wilkins* is misplaced.

¶ 16    In *Wilkins*, the defendant ambulance driver was transporting a patient on a non-emergency basis from a hospital to a nursing home when the driver was involved in a collision with a vehicle driven by the plaintiff. *Wilkins*, 2013 IL 114310, ¶ 3. The supreme court found that the accident occurred while the ambulance was transporting a patient, and as a consequence, there was no dispute that the ambulance operator was providing non-emergency medical service. *Id.* ¶ 21. In the instant case, there was no patient being transported at the time of the accident; the ambulance was en route to pick up a patient for non-emergency transport.

¶ 17    The defendants' contention, that section 3.150(a) of the EMS Act immunizes the driver of an ambulance from liability for negligence in the operation of the ambulance from the time that the ambulance is dispatched to provide non-emergency medical transportation but before the patient is actually in transit, fails to take into consideration the statutory definition of non-emergency medical services. Section 3.150(a) of the EMS Act provides immunity for negligence in the provision of "non-emergency medical services." 210 ILCS 50/3.150(a) (West 2016). Section 3.10(g) defines "non-emergency medical services" as medical services rendered to patients "during transportation of such patients to or from health care facilities." 210 ILCS 50/3.10(g) (West 2016).

¶ 18    In construing the immunity provided in section 3.150(a), we must consider the EMS Act in its entirety. We are not at liberty to depart from the plain language of a statute by reading into conditions that the legislature did not express. *Wilkins*, 2013 IL 114310, ¶ 22. Had the legislature intended to provide immunity for the negligence of an ambulance driver while en route to pick up a patient for transport as suggested by the defendants, it could have included the activity within the definition of "non-emergency medical services." The legislature did not include the activity within the definition of non-emergency medical services, and we are not at liberty to do so under the guise of statutory construction.

¶ 19    We find the statutory language of the EMS Act to be clear and unambiguous. It provides immunity for any person who in good faith provides non-emergency medical services unless the acts or omissions of the individual constitute willful and wanton misconduct. Non-emergency medical services are statutorily limited to medical services rendered to patients *during transportation* to health care facilities. As the ambulance driven by Nicholas was not transporting a patient to a health care facility at the time of the collision with the vehicle driven by the plaintiff, section 3.150(a) of the EMS Act does not provide Nicholas or Lifeline with immunity from liability for any negligent acts or omissions which proximately resulted in damages to the plaintiff. We conclude, therefore, that the circuit court erred in granting the defendants' motion and dismissing counts I and III of the plaintiff's first amended complaint, and as a consequence, we reverse the judgment of the circuit court and remand the matter for further proceedings.

¶ 20    Reversed and remanded.

¶ 21    JUSTICE HALL, dissenting:

¶ 22    I respectfully dissent from the majority and agree with defendants that they are entitled to immunity under section 3.150(a) of the EMS Act (210 ILCS 50/3.150(a) (West 2016)). That section states:

> "Any person, agency or governmental body certified, licensed or authorized pursuant to this Act or rules thereunder, who in good faith provides Emergency or non-emergency medical services during a Department approved training course, in the normal course of conducting their duties, or in an emergency, shall not be civilly liable as a result of their acts or omissions in providing such services unless such acts or omissions, including the bypassing of nearby hospitals or medical facilities in accordance with the protocols developed pursuant to this Act, constitute willful and wanton misconduct." *Id.*

¶ 23    The majority notes that defendants correctly assert that section 3.150(a) immunizes the operator of an ambulance from civil liability for negligence committed in the non-emergency transport of a patient, relying on the supreme court's decision in *Wilkins v. Williams*, 2013 IL 114310, ¶¶ 21, 59. However, the majority concludes that defendants' argument that immunity from liability for negligence applies to acts or omissions committed from the time that the ambulance is dispatched to provide non-emergency medical transportation of a patient is misplaced. The majority instead finds that there is no immunity because no patient was being transported at the time of the accident. I disagree.

¶ 24    Section 3.10(g) of the Act, captioned Scope of Services, states:

> " 'Non-emergency medical services' means medical care, clinical observation, or medical monitoring rendered to patients whose conditions do not meet this Act's definition of emergency, before or during transportation of such patients to or from health care facilities visited for the purpose of obtaining medical or health care services which are not emergency in nature, using a vehicle regulated by this Act." 210 ILCS 50/3.10(g) (West 2016).

¶ 25    The legislature did not specifically exclude driving an ambulance to pick up a patient from being immunized under section 3.10(g) though it could have done so. When the statutory language is clear and unambiguous, it must be applied without resort to other aids of construction. *Wilkins*, 2013 IL 114310, ¶ 14. Here, the majority reads a limitation into the Act that does not exist. As the supreme court stated in *Wilkins*, "[t]here is no rule of [statutory] construction that authorizes a court to declare that the legislature did not mean what the plain language of the statute imports." *Id.* ¶ 22. Where the legislature has not chosen to limit immunity for driving an ambulance to pick up a patient, it has unambiguously done so. See *id.* ¶ 22; see also *Bass v. Cook County Hospital*, 2015 IL App (1st) 142665, ¶ 13 (" '[w]e must not depart from the plain language of the Act by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent' " (quoting *Town & Country Utilities, Inc. v. Illinois Pollution Control Board*, 225 Ill. 2d 103, 117 (2007))). Since the legislature did not include such limitation in the plain language of section 3.10(g), then the legislature must have intended to immunize liability for driving an ambulance to pick up a patient, and thus under section 3.10(g) of the Act, medical services began upon dispatch.

¶ 26    Here, defendants were operating the ambulance in the "normal course of conducting their duties" (210 ILCS 50/3.150(a) (West 2016)) and were therefore immunized when dispatched. Driving an ambulance to pick up a patient is a service rendered before transportation of a patient. I would find that driving to pick up a patient is as much medical care as driving with the patient; it is all in service to the patient. I would therefore affirm the decision of the circuit court granting defendants' motion to dismiss and dismissing counts I and III of plaintiff's first amended complaint.