**2020 IL 124610**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 124610)

ROBERTO HERNANDEZ, Appellee, v. LIFELINE AMBULANCE,
LLC, *et al.*, Appellants.

*Opinion filed June 18, 2020.*

JUSTICE MICHAEL J. BURKE delivered the judgment of the court, with opinion.

Justices Kilbride, Karmeier, and Theis concurred in the judgment and opinion.

Justice Neville dissented, with opinion, joined by Chief Justice Anne M. Burke and Justice Garman.

**OPINION**

¶ 1     The issue presented is whether section 3.150 of the Emergency Medical Services Systems Act (EMS Act) (210 ILCS 50/3.150 (West 2016)) provides immunity from liability—to an ambulance owner and its driver—stemming from a

motor-vehicle accident caused by the negligent operation of the ambulance while en route to pick up a patient for nonemergency transportation. We answer this question in the negative, holding that defendants are not immune from liability under the circumstances of this case.

¶ 2                                    BACKGROUND

¶ 3        Plaintiff, Roberto Hernandez, suffered bodily injuries on March 11, 2016, when a private ambulance owned by Lifeline Ambulance, LLC (Lifeline), and driven by Joshua M. Nicholas ran a red light at the intersection of Grand Avenue and Lake Shore Drive in Chicago and collided with plaintiff's vehicle. Plaintiff filed a three-count, first amended complaint against defendants in the circuit court of Cook County, seeking to recover damages for his injuries based on the negligence of the driver (count I), the willful and wanton misconduct of the driver (count II), and the doctrine of *respondeat superior* (count III). Plaintiff's complaint alleged that, at the time of the collision, defendant Nicholas was not operating the vehicle with his lights and siren engaged. Plaintiff further alleged that Nicholas was not proceeding in the ambulance in response to an emergency and that nobody on board was in the process of providing emergency or nonemergency medical services at the time of the collision.

¶ 4        American Access Casualty Company (American), as plaintiff's automobile insurer, brought a subrogation action against defendants. The two lawsuits were identical in their theories of liability and were eventually consolidated.

¶ 5        Pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2016)), defendants moved to dismiss with prejudice counts I and III of both complaints based on the immunity provision of the EMS Act.[1] Defendants asserted that Nicholas was operating Lifeline's ambulance in the performance of nonemergency medical services within the meaning of the EMS Act at the time of

---

[1]Defendants also sought section 2-619 dismissal of count II of the amended complaints of both plaintiff and American. Count II of those complaints alleged willful and wanton misconduct on the part of defendant Nicholas. With respect to their argument seeking dismissal of count II, however, defendants did not rely upon any immunity provision. Instead, they asserted that there was insufficient evidence to support a finding that Nicholas's conduct was willful and wanton.

the collision with plaintiff's vehicle and, as a consequence, they are immune from civil liability unless Nicholas's acts or omissions constituted willful or wanton misconduct. Defendants supported their motion with the affidavits of Nicholas and Eric Hagman, a Lifeline employee who was a passenger in the ambulance at the time of the collision with plaintiff's vehicle. The affidavits state that, prior to the collision, Nicholas and Hagman received a radio dispatch from Lifeline "directing the ambulance crew to proceed to pick up a patient in the western suburbs for transport to a second location."

¶ 6       Plaintiff's response argued that the immunity provision of the EMS Act does not apply to the operation of an ambulance until it is engaged in providing medical services to a patient. Plaintiffs maintained that the mere use of the ambulance to pick up a patient for nonemergency transport is not conduct covered by the immunity set forth in the EMS Act.

¶ 7       The affidavits and exhibits presented by the parties in support of their arguments show that the nonemergency transport at issue in this case involved a patient that had undergone dialysis treatment at a health care facility in Villa Park, Illinois, during the morning of March 11, 2016. The patient was scheduled to be picked up from the dialysis center between 11:59 a.m. and 1:45 p.m. and then transported back to Hillside, Illinois. At 12:22 p.m. on the day in question, Lifeline first assigned an ambulance staffed by Wade Overton and Samantha Robledo to pick up the patient. But at 12:30 p.m. the pickup was reassigned to the crew of Nicholas and Hagman, the crew involved in the accident at issue. Nicholas and Hagman were to drive approximately 20 miles from Lakeshore Drive in Chicago to Villa Park. But a few minutes after dispatch, Nicholas ran the red light, and the collision ensued. Four minutes after the accident, Lifeline reassigned the transport of the patient to a third ambulance crew.

¶ 8       The circuit court granted defendants' motion to dismiss in part. It dismissed with prejudice the claims grounded in negligence, specifically counts I and III of plaintiff's first amended complaint and count I of American's amended complaint. The court, however, denied the motion to dismiss claims grounded in willful and wanton misconduct, specifically count II of both plaintiff's first amended complaint and American's amended complaint. The court found that the EMS Act's immunity applies when an ambulance has been "dispatched for non-emergency medical

- 3 -

services and there is no patient in the vehicle." The court further found that there was no just reason for delaying appeal pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).

¶ 9 Plaintiff filed a timely notice of appeal, but American did not appeal. On appeal, plaintiff argued before the appellate court, as he did before the circuit court, that the immunity provision of the EMS Act does not apply to the operation of an ambulance until it is engaged in providing medical services. He pointed out that, at the time of the collision, Lifeline's ambulance was not transporting a patient or providing medical services to any patient. Rather, it was en route to pick up a patient—who was many miles away in the western suburbs—for a nonemergency transport.

¶ 10 The appellate court, with one justice dissenting, agreed with plaintiff. It found that defendant's contention that section 3.150 of the EMS Act immunizes the driver of an ambulance from liability for negligence in the operation of the ambulance from the time that the ambulance is dispatched to provide nonemergency medical transportation but before the patient is actually in transit fails to take into consideration the statutory definition of nonemergency medical services found in the EMS Act. 2019 IL App (1st) 180696, ¶ 17. The appellate court stated that the EMS Act defines " 'non-emergency medical services' as medical services rendered to patients 'during transportation of such patient to health care facilities.' " *Id.* (quoting 210 ILCS 50/3.10(g) (West 2016)). The appellate court concluded that, "[h]ad the legislature intended to provide immunity for the negligence of an ambulance driver while en route to pick up a patient for transport as suggested by defendants, it could have included the activity within the definition of 'non-emergency medical services.' " *Id.* ¶ 18. The appellate court noted that the legislature had not done so and that the court was not at liberty to do so under the guise of statutory construction. *Id.*

¶ 11 Defendants filed a petition for leave to appeal, which we allowed. Ill. S. Ct. R. 315 (eff. July 1, 2018). We later granted the Illinois Trial Lawyers Association's request to submit an *amicus curiae* brief in support of plaintiff. See Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 12 ANALYSIS

- 4 -

¶ 13    The question presented before this court is whether section 3.150(a) of the EMS Act immunizes defendants from liability with respect to a negligence claim resulting from a traffic accident that occurred on the way to pick up a patient for a nonemergency transport.

¶ 14    The claims at the center of this appeal were dismissed by the circuit court pursuant to section 2-619 of the Code. A motion to dismiss brought under that section admits the legal sufficiency of a plaintiff's complaint but asserts affirmative matter that defeats the claim. *Smith v. The Vanguard Group, Inc.*, 2019 IL 123264, ¶ 9. Immunity from tort liability is an affirmative matter that may properly be raised in a section 2-619 motion. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 54. When ruling on such motions, a court must accept as true all well-pled facts in the plaintiff's complaint and any reasonable inferences that arise from those facts. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. Our review of the propriety of a section 2-619 dismissal is *de novo*. *In re Estate of Shelton*, 2017 IL 121199, ¶ 21.

¶ 15    In undertaking our review of the appellate court's order reversing the section 2-619 dismissal in this case, we are called upon to construe the EMS Act. Our review of a lower court's construction of a statute is also conducted *de novo*. *Wilkins v. Williams*, 2013 IL 114310, ¶ 13.

¶ 16    It is axiomatic that the primary goal in interpreting a statute is to ascertain and give effect to the legislative intent. *Id.* ¶ 14. The best indication of that intent is the statutory language itself, giving it its plain and ordinary meaning. *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 11. The words and phrases of a statute should be interpreted in relation to each other and the entire act, and no word or provision should be rendered meaningless. *Cassens Transport Co. v. Industrial Comm'n*, 218 Ill. 2d 519, 524 (2006). When the language of the statutory provision at issue is clear and unambiguous, it must be applied as written without reliance upon other aids of construction. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440 (2010).

¶ 17    The statute at issue in this case, section 3.150(a) of the EMS Act, provides as follows:

"Any person, agency or governmental body certified, licensed or authorized pursuant to this Act or rules thereunder, who in good faith provides emergency *or non-emergency medical services* during a Department approved training course, in the normal course of conducting their duties, or in an emergency, shall not be civilly liable as a result of their acts or omissions in providing such services unless such acts or omissions, including the bypassing of nearby hospitals or medical facilities in accordance with the protocols developed pursuant to this Act, constitute willful and wanton misconduct." (Emphasis added.) 210 ILCS 50/3.150(a) (West 2016).

¶ 18    Section 3.10(g) provides that the term " '[n]on-emergency medical services' " as used in the EMS Act means:

"*medical care, clinical observation, or medical monitoring rendered to patients* whose conditions do not meet this Act's definition of emergency, before or during transportation of such patients to or from health care facilities visited for the purpose of obtaining medical or health care services which are not emergency in nature, using a vehicle regulated by this Act." (Emphasis added.) *Id.* § 3.10(g).

¶ 19    Defendants argue that the appellate court wrongly held that the immunity did not apply based on the definition of " '[n]on-emergency medical services' " set forth in section 3.10(g) quoted above. Defendants point out that the appellate court unexplainably omitted from its opinion the word *before* from the term "before or during transportation" in quoting the statute and construed the remaining part of the phrase "during transportation" as extending immunity only for negligent acts or omissions committed by the ambulance operator that occur after the patient is picked up for nonemergency transport. Relying upon prior cases from this court that have applied the immunity to the failure of paramedics to locate a patient by opening a door upon the arrival at the scene of an emergency (*American National Bank & Trust Co. v. City of Chicago*, 192 Ill. 2d 274 (2000)), and the failure to assess and evaluate a patient after arriving at the scene (*Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324 (2008)), defendants now argue that these decisions should be applied here to extend immunity to cover negligent acts or omissions that take place during the drive on the way to the actual pickup for nonemergency transportation.

¶ 20     We first address defendants' reliance upon *American National* and *Abruzzo* and find that those cases do not dictate the outcome defendants seek here. In *American National*, the plaintiff's decedent suffered an asthma attack while at home alone in her third-floor apartment. *American National*, 192 Ill. 2d at 276. She called 911 to request help. Two paramedics and a firefighter arrived at the scene and knocked on the decedent's door but received no response. They were told by the neighbor in the only other apartment on the third floor that a young couple lived in the apartment in question and did not appear to have any medical problems. The paramedics concluded that they were not needed and left the scene. Later that same day, the paramedics returned to the same apartment, again in response to an emergency call. This time they found the decedent's dead body lying on the floor. *Id.* at 276-77.

¶ 21     The plaintiff filed a multicount complaint against the City of Chicago and the two paramedics, alleging that the paramedics acted negligently in failing to try and open the unlocked door of the decedent's apartment when they arrived at the scene the first time. *Id.* at 277. The defendants moved to dismiss the complaint, arguing that they were immune from liability under the EMS Act. *Id.* at 277-78. At that time, the immunity provision of the EMS Act provided that

"[a]ny person, agency or governmental body licensed or authorized pursuant to this Act or its rules, who in good faith provides life support services during a Department approved training course, in the normal course of conducting their duties, or in an emergency shall not be civilly or criminally liable as a result of their acts or omissions in providing those services unless the acts or omissions, including the bypassing of nearby hospitals or medical facilities for the purpose of transporting a trauma patient to a designated trauma center in accordance with the protocols developed pursuant to Section 27 of this Act, are inconsistent with the person's training or constitute willful and wanton misconduct." 210 ILCS 50/17(a) (West 1994).

¶ 22     The plaintiff responded to the defendants' motion to dismiss by arguing that the immunity of section 17(a) quoted above only applied when the emergency responders "actually rendered" life support treatment to a patient and that the immunity provision was inapplicable because the two paramedics neglected to administer any treatment at all. *American National*, 192 Ill. 2d at 282.

- 7 -

¶ 23    This court rejected the plaintiff's argument. In so doing, it noted that the EMS Act defined the terms " 'advanced life support—mobile intensive care services,' " " 'basic life support services,' " and " 'intermediate life support services' " to include acts or procedures directly involving patient care, but this court then found that those definitions were "designed to distinguish one level or form of care from another." *Id.* at 283. This court noted that the legislature could reasonably have decided to omit from those definitions "conduct that is common to them all or, though preparatory to the actual rendering of medical care, is no less an integral part of providing life support services." *Id.*

¶ 24    This court further found that the immunity provision of section 17(a) also referred to the transportation of patients and noted that, "[i]f transporting a patient to a hospital is an aspect of life support services, then so too is locating a patient in the first place." *Id.* This court also took into account that regulation in the EMS Act of such matters as communications, response time, and standards for ambulance operations showed the EMS Act's broad scope and required an equally broad meaning be given to "life support services" in the immunity provision. *Id.* Finally, the court instructed that locating a person in need of medical services by trying to open the unlocked door of the residence is the "first step in providing life support services." *Id.* at 286. And not even that step was taken in this case.

¶ 25    In *Abruzzo*, the plaintiff sued the City of Park Ridge, alleging that the city's emergency medical technicians (EMT) were dispatched to provide medical care to her 15-year-old son. 231 Ill. 2d at 327. The EMTs arrived at the scene and found the boy "unresponsive" but left without examining him or providing any treatment. *Id.* at 327-28. The child died later that same day of anoxic encephalopathy due to cocaine and opiate intoxication. *Id.* at 328-29. The physician's report concluded that the failures of the emergency responders were the proximate cause of death. *Id.* at 329.

¶ 26    The sole issue presented in *Abruzzo* was whether the limited immunity provision of section 3.150 of the EMS Act (which immunizes only negligence and not willful and wanton misconduct) governed over the absolute immunity provisions of sections 6-105 and 6-106(a) of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/6-105, 6-106(a) (West 2004)). *Abruzzo*, 231 Ill. 2d at 330. This court held that the limited immunity

provision of the EMS Act governed. Similar to the argument raised by the plaintiff in *American National*, the defendant city in *Abruzzo* argued that the immunity of the EMS Act applies only *after* medical services are undertaken in good faith and not to situations where emergency responders arrive at the scene but fail to examine, diagnose, or prescribe any treatment. *Id.* at 331. This court rejected that reasoning for reasons similar to those noted in *American National*. Additionally, this court in *Abruzzo* found that the amendment of the immunity of the EMS Act in section 3.150(a) (deleting the term "life support services" and replacing it with the term "emergency or non-emergency medical services") did not change the outcome because the recent version was even broader in scope than the previous version. *Id.* at 336-39; see Pub. Act 89-177, § 5 (eff. July 19, 1995) (recodifying section 17 as section 3.150 and broadening "life support services" to "emergency or non-emergency medical services"). Finally, in rejecting the city's contention that actual emergency medical services had to be undertaken to fall under the EMS Act immunity, this court concluded its analysis by emphasizing the following:

> "Plaintiff here alleges that the City failed to assess, examine, or transport [the patient] to a hospital. Assessment and evaluation are integral to providing emergency medical services. One of the first steps in providing emergency care is assessing the patient to determine the necessary medical services. No treatment or emergency care can be provided until the patient's condition is assessed.
>
> We also note that the EMS Act immunizes 'acts or omissions' in providing emergency medical services unless those acts or omissions constitute willful and wanton misconduct. 210 ILCS 50/3.150(a) (West 2004). The failure to assess or examine is an 'omission' in providing emergency medical services under our interpretation of the immunity provision." *Abruzzo*, 231 Ill. 2d at 345.

We find *American National* and *Abruzzo* to be distinguishable from the present case for several reasons. But to the extent these cases provide any guidance at all in resolving the issue before us, we find that they tend to support plaintiff's argument that the EMS Act's immunity does not apply to the present situation.

First, we note that the fact patterns of both *American National* and *Abruzzo* involved patients in need of urgent, emergency medical care. Both fact patterns involved paramedics called to assist a patient at a residence where the paramedics

then arrived at the scene but omitted to provide any needed emergency medical services. Neither case involved an ambulance en route to the scene on a nonemergency transport, but again, both cases involved the failure to render emergency services to a patient upon arrival. And neither case called for the interpretation and application of the term "non-emergency medical services." Thus, we find that the facts presented in these two cases—both of which are relied upon heavily by defendants to support their immunity argument—are markedly different from the facts of the case currently before us.

¶ 29     Second, we find that application of the legal principles enunciated in these two cases can only lead to the conclusion that the immunity of section 3.150(a) does not apply here. Both *American National* and *Abruzzo* found it key that the immunity covered " 'preparatory conduct integral to providing emergency treatment.' " See *Wilkins*, 2013 IL 114310, ¶ 29 (quoting *Abruzzo*, 231 Ill. 2d at 341); see also *American National*, 192 Ill. 2d at 283.

¶ 30     Defendants argue that the mere act of driving to a pickup location for a nonemergency transport is "preparatory conduct that is integral" to providing medical care. We disagree.

¶ 31     Neither *American National* nor *Abruzzo* specifically defined what was meant by preparatory conduct that is integral. We do know, however, that *American National* found that locating the person in need of services upon arrival at the scene is the integral first step toward "providing life support services." *American National*, 192 Ill. 2d at 283, 286. By extension, we believe that the steps integral to the providing of the nonemergency medical services at issue here would not begin until the ambulance arrives at the location of the scene of the nonemergency pickup. In that regard, *American National* stated as follows:

> "In the present case, the victim's door was unlocked. If the paramedics had been following these vital and basic precepts of their training, [*i.e.*, which required that paramedics always attempt to open a shut door by turning the knob before exiting the scene altogether to ensure delivery of emergency services to a critically ill caller,] as alleged, they would have found the victim inside the residence, and perhaps then they could have saved her life. Locating a person in need of emergency medical treatment is the first step in providing life support services. Not even that first step was taken here." *Id.* at 286.

¶ 32        If locating the caller at the scene of an emergency is the integral preparatory first step of providing the services that trigger the immunity, then it follows that the simple act of driving many miles before reaching the scene of a nonemergency transport cannot be integral preparatory conduct that triggers the immunity involved in rendering nonemergency medical care to a patient. Additionally, the particular facts of this case offer nothing to support the notion that the ambulance employees' conduct in the present case was integral to providing any nonemergency medical services to the patient. The patient that was the subject of the pickup was already at a health care facility for his dialysis appointment, and his window of pickup was between 11:59 a.m. and 1:45 p.m. The assignment of the ambulance was always susceptible to being changed; Lifeline originally assigned the transport to one ambulance crew before reassigning it to Nicholas and Hagman. After the collision occurred, Lifeline reassigned the pickup to a third crew.

¶ 33        Again, the EMS Act provides that, unless willful and wanton conduct is involved, any entity licensed under the EMS Act shall not be civilly liable as a result of its "acts or omissions" in providing "non-emergency medical services." 210 ILCS 50/3.150(a) (West 2016). Here, Nicholas's "acts or omissions" in driving and then running the red light were not integral or in any way related to providing nonemergency medical care. This is in sharp contrast to *Abruzzo*, where this court held that the failure at the scene to assess or examine a person that is the subject of a 911 call is such an "omission" related to the providing of emergency medical services and that "[o]ne of the first steps in providing emergency care is assessing the patient to determine the necessary medical services." *Abruzzo*, 231 Ill. 2d at 345.

¶ 34        Defendants fault the appellate court for omitting the word "before" from the EMS Act's definition of "non-emergency medical services." Again, that definition provides in relevant part that " '[n]on-emergency medical services' means medical care, clinical observation, or medical monitoring rendered to patients *** *before or during transportation* of such patients to or from health care facilities." (Emphasis added.) 210 ILCS 50/3.10(g) (West 2016). The appellate court's omission of the word "before" in its quoting of this definition was unfortunate, but defendants' argument ultimately has no bearing at all on the ultimate outcome.

¶ 35    The word "before" in section 3.10(g) must be read in conjunction with the other words and phrases in the definition of "non-emergency medical services," which make clear that the medical care must be "rendered to" *the patient*. It would contort the statutory language beyond recognition to hold, as defendants would have it, that "medical care, clinical observations, or medical monitoring rendered to patients" may include the mere nonintegral act of driving many miles from the patient.

¶ 36    It is certainly true that the immunity of the EMS Act is not limited only to *injuries* that occur to the *patient* to whom the medical services are to be rendered. *Wilkins*, 2013 IL 114310, ¶ 23. In *Wilkins*, we held that section 3.150 immunity applied in a case where a motorist sued an ambulance company and its driver for an accident allegedly caused by the EMT driver while another paramedic on board medically monitored a patient in the ambulance. *Id.* ¶¶ 3-10. But even though the immunity extends to third-party motorists' claims, there still must be some connection to the providing of medical services to a patient. *Id.* ¶ 23. In that regard, we noted that "[i]t is clear that section 3.150(a) immunity extends only to those providing emergency or nonemergency medical services, which would not include driving to and from work." *Id.* ¶ 58.

¶ 37    It is also clear that while the "rendered to patients" language of the statute has been interpreted broadly to include "preparatory actions integral to providing emergency treatment," such as where paramedics commit an omission in providing medical services by failing to attempt the opening of a door to locate the patient (*American National*) or failing to assess and evaluate the patient (*Abruzzo*), the preparatory actions contemplated by our case law begin at the scene with the attempt to locate the patient. We conclude, therefore, that the only logical meaning of "before *** transportation" must be that its reach is limited to the medical care, clinical observations, or medical monitoring rendered (or not rendered due to omission) to the patient once the EMTs arrive at the scene of the pickup to attempt to contact the patient. Any other interpretation would not make sense, as we find it would be impossible to render any medical care, clinical observations, or medical monitoring prior to arriving at the scene. Nor would it be possible—while driving at a distance of 20 miles away from a patient—to effectuate the preparatory conduct integral to medical care that is considered tantamount to providing the "first steps" of medical care noted in *First National* and *Abruzzo* of locating the patient and conducting an evaluation.

¶ 38    In using the term "before or during transportation" in its definition of "non-emergency medical care," we believe that the legislature envisioned paramedics locating patients who are subject to the nonemergency transport at the pickup location, assessing their condition, perhaps transporting them on a gurney to lift them into the ambulance, and rendering other preparatory conduct that is integral to providing medical care at the scene. This is consistent with our judicial construction of the statute in *First National* and *Abruzzo*, which construction effectively became a part of the statute itself. See *Village of Vernon Hills v. Heelan*, 2015 IL 118170, ¶ 19 (a judicial construction of a statute by this court becomes a part of the statute itself). The legislative amendment to section 3.10(g) of the EMS Act to define nonemergency medical services to include medical care rendered to patients "*before or* during transportation" became effective January 1, 2006. (Emphasis added.) Pub. Act 94-568 (eff. Jan. 1, 2006) (amending 210 ILCS 50/3.10(g)). At the time of this amendment, the legislature was fully aware that this court had construed the EMS Act immunity to include "preparatory" conduct integral to providing actual medical services. See *American National*, 192 Ill. 2d at 283. We believe the legislature was simply codifying this court's construction in *American National* to include immunity for acts or omissions that occur before transportation along the limited lines discussed in that case. And we must therefore reject defendants' attempt to advocate for a construction outside of those lines.

¶ 39                                    CONCLUSION

¶ 40    For the foregoing reasons, we hold that the immunity provision of section 3.150(a) of the EMS Act does not apply under the circumstances of the present case to bar plaintiff's negligence claims. Accordingly, we affirm the judgment of the appellate court, which reversed the trial court's order granting defendants' motion to dismiss. And we remand the cause to the circuit court of Cook County for further proceedings consistent with this opinion.

¶ 41    Appellate court judgment affirmed.

¶ 42    Circuit court judgment reversed.

- 13 -

¶ 43    Cause remanded.

¶ 44    JUSTICE NEVILLE, dissenting:

¶ 45    Plaintiff, Roberto Hernandez, filed a complaint in the circuit court of Cook County against Lifeline Ambulance, LLC (Lifeline), and Joshua Nicholas, individually and as an agent or employee of Lifeline. Plaintiff sought to recover damages for injuries sustained in a collision between his automobile and defendants' ambulance. The circuit court dismissed negligence claims against defendants pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2016)), on the ground that defendants were immune from liability under section 3.150(a) of the Emergency Medical Services Systems Act (EMS Act). 210 ILCS 50/3.150(a) (West 2016). A divided panel of the appellate court reversed. 2019 IL App (1st) 180696. Affirming the judgment of the appellate court, this court holds that (1) decisions of this court that broadly construe the EMS Act are distinguishable from the case at bar (*supra* ¶¶ 20-33) and (2) the plain language of the EMS Act does not support the application of EMS Act immunity here (*supra* ¶¶ 34-38).

¶ 46    I respectfully disagree. In reaching their ultimate outcome, my colleagues in the majority misconstrue the plain language of the EMS Act and overlook the broad scope of the EMS Act as authoritatively established by prior cases from this court. For the following reasons, I would reverse the judgment of the appellate court and affirm the judgment of the circuit court. Therefore, I dissent.

¶ 47                              I. BACKGROUND

¶ 48    On March 11, 2016, defendant Nicholas was employed by Lifeline as an ambulance driver and an "Emergency Medical Technician-Basic" (EMT-B) (see 210 ILCS 50/3.50(a) (West 2016)). Nicholas was driving an ambulance owned and operated by Lifeline southbound on Lake Shore Drive in Chicago. His ambulance partner, Eric Hagman, received a radio call from Lifeline dispatching them to pick up a patient for nonemergency medical transport from Symphony at Aria Post Acute Care in Hillside to Villa Park Home Dialysis in Villa Park. The crew decided to take the Grand Avenue exit, with the intention to proceed on lower Wacker Drive

and then onto westbound Interstate 88/Eisenhower Expressway. The ambulance was not operating with its emergency lights and siren activated.

¶ 49    At the same time, plaintiff was driving his Dodge Caravan west on Grand Avenue near Navy Pier. At approximately 12:34 p.m., plaintiff drove westbound into the intersection of Grand Avenue and Lake Shore Drive. Plaintiff had a green traffic light for Grand Avenue, but Nicholas failed to stop at the corresponding red traffic light for Lake Shore Drive. Plaintiff's vehicle and defendants' ambulance collided in the intersection. Plaintiff sustained injuries. Following the collision, transport of the patient was reassigned to another ambulance.

¶ 50    Plaintiff filed a complaint alleging various claims against defendants. Also, plaintiff's automobile insurer, American Access Casualty Company (American), filed a subrogation action against defendants. The circuit court consolidated the two actions. Defendants filed a motion to dismiss both complaints in their entirety pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2016)).

¶ 51    On August 2, 2017, plaintiff filed the instant first amended complaint, which contains claims against Nicholas, for negligence (count I) and willful and wanton misconduct (count II), and a claim against Lifeline under the doctrine of *respondeat superior* (count III). On August 7, 2017, American filed an amended complaint, which pled the same claims against defendants.

¶ 52    Defendants moved to dismiss counts I through III of plaintiff's first amended complaint and count I of American's amended complaint pursuant to section 2-619 of the Code of Civil Procedure (*id.* § 2-619). Defendants contended that, absent willful and wanton misconduct, they were immune from civil liability under the immunity provision of the EMS Act (210 ILCS 50/3.150(a) (West 2016)).

¶ 53    On March 7, 2018, the circuit court entered an order granting in part and denying in part defendants' section 2-619 motion to dismiss. The court dismissed with prejudice the claims grounded in negligence, specifically counts I and III of plaintiff's first amended complaint and count I of American's amended complaint. However, the court denied the motion to dismiss the claims grounded in willful and wanton misconduct, specifically count II of plaintiff's first amended complaint and American's amended complaint. On March 19, 2018, after denying plaintiff's

- 15 -

motion to reconsider, the circuit court found that there was no just reason to delay appeal from the March 7 order. See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). Plaintiff timely appealed, but American did not file a notice of appeal.

¶ 54    A divided panel of the appellate court reversed the dismissal. 2019 IL App (1st) 180696. The appellate court concluded that the immunity provision of the EMS Act was limited to medical services rendered to patients during transportation to health care facilities. The court held that the EMS Act's immunity provision did not extend to defendants because they were en route to pick up a patient for transport. *Id.* ¶ 19. The dissenting justice opined that EMS Act immunity extended to driving an ambulance to pick up a patient. *Id.* ¶¶ 21-26 (Hall, J., dissenting).

¶ 55    Defendants appeal to this court. My colleagues in the majority now hold that EMS Act immunity "is limited to the medical care, clinical observations, or medical monitoring rendered (or not rendered due to omission) to the patient once the EMTs arrive at the scene of the pickup to attempt to contact the patient." *Supra* ¶ 37. For the following reasons, I respectfully disagree.

¶ 56                                    II. ANALYSIS

¶ 57    The ultimate question presented for our review is whether section 3.150(a) of the EMS Act immunizes defendants from civil liability for their alleged negligent acts and omissions. This matter comes before us after the circuit court granted in part a section 2-619(a)(9) motion to dismiss.

¶ 58    The purpose of a motion to dismiss pursuant to section 2-619 is to dispose of issues of law and easily proved issues of fact early in the litigation. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). A section 2-619 motion to dismiss admits well-pled facts but does not admit conclusions of law and conclusory factual allegations unsupported by allegations of specific facts in the complaint. *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 16. Section 2-619(a)(9) permits involuntary dismissal where the alleged claim is barred by an affirmative matter that avoids the legal effect of or defeats the claim. 735 ILCS 5/2-619(a)(9) (West 2016). The "affirmative matter" that the defendant asserts must be apparent on the face of the complaint or supported by affidavits or certain other evidentiary materials. *Epstein v. Chicago Board of Education*, 178 Ill.

2d 370, 383 (1997). Immunity from tort liability is an affirmative matter properly raised in a section 2-619(a)(9) motion to dismiss. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 54; see *Epstein*, 178 Ill. 2d at 383 (same).

¶ 59　　　　On appeal from a dismissal under section 2-619(a)(9), a reviewing court determines whether there exists a genuine issue of material fact that should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law. Review is *de novo*. *McIntosh*, 2019 IL 123626, ¶ 17; *Epstein*, 178 Ill. 2d at 383.

¶ 60　　　　In the case at bar, defendants argue that section 3.150(a) of the EMS Act immunizes an ambulance driver who is involved in an automobile accident when the driver is in transit to pick up a patient for nonemergency medical transport. Plaintiff, relying on the appellate court's decision, argues that section 3.150(a) does not apply to an ambulance driver who is en route to pick up a passenger for nonemergency transport.

¶ 61　　　　Whether section 3.150(a) of the EMS Act immunizes defendants from liability for their alleged negligence requires us to construe the statute. Statutory construction presents a question of law reviewed *de novo*. *Village of Vernon Hills v. Heelan*, 2015 IL 118170, ¶ 18; *Wilkins v. Williams*, 2013 IL 114310, ¶ 13.

¶ 62　　　　In construing the EMS Act, I am guided by familiar principles. The primary objective in statutory construction is to ascertain and give effect to the intent of the legislature. The most reliable indicator of legislative intent is the language of the statute, which must be given its plain and ordinary meaning. *Manago v. County of Cook*, 2017 IL 121078, ¶ 10; *Wilkins*, 2013 IL 114310, ¶ 14; *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 332 (2008). A court must view and give effect to the entire statutory scheme. *Krautsack v. Anderson*, 223 Ill. 2d 541, 553 (2006); *Primeco Personal Communications, L.P. v. Illinois Commerce Comm'n*, 196 Ill. 2d 70, 87-88 (2001). Therefore, words and phrases must be construed in relation to other relevant statutory provisions and not in isolation. Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous. Also, the court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2016 IL 120394, ¶ 25; *In re M.M.*, 2016 IL

119932, ¶ 16.

¶ 63                                     A. Statutory Language

¶ 64        After reciting the familiar canons of statutory construction (*supra* ¶ 16) and quoting the pertinent sections of the EMS Act (*supra* ¶¶ 17-18), my colleagues in the majority begin their ascertainment of legislative intent by first addressing this court's decisions in *American National Bank & Trust Co. v. City of Chicago*, 192 Ill. 2d 274 (2000), and *Abruzzo*, 231 Ill. 2d 324 (*supra* ¶ 19). My colleagues put the cart before the horse.

¶ 65        It is well settled that a court begins its ascertainment of legislative intent with an examination of the statutory language. *In re Marriage of Mathis*, 2012 IL 113496, ¶ 20; *In re Marriage of Best*, 228 Ill. 2d 107, 116 (2008); *Brucker v. Mercola*, 227 Ill. 2d 502, 513 (2007); *People v. Molnar*, 222 Ill. 2d 495, 518 (2006); *People ex rel. Department of Public Aid v. Smith*, 212 Ill. 2d 389, 397 (2004); *Davis v. Toshiba Machine Co., America*, 186 Ill. 2d 181, 184-85 (1999). Therefore, I begin my search for legislative intent with an examination of the relevant provisions of the EMS Act.

¶ 66        The express intent of the EMS Act is to "provide the State with systems for emergency medical services by establishing within the State Department of Public Health a central authority responsible for the coordination and integration of all activities within the State concerning *** non-emergency medical transports" and also "to provide minimum standards for the statewide delivery of EMS services." 210 ILCS 50/2 (West 2016).

¶ 67        Section 3.150 provides for immunity from civil liability as follows in relevant part:

        "(a) Any person, agency or governmental body certified, licensed or authorized pursuant to this Act or rules thereunder, who in good faith provides emergency or non-emergency medical services during a Department approved training course, in the normal course of conducting their duties, or in an emergency, shall not be civilly liable as a result of their acts or omissions in

providing such services unless such acts or omissions *** constitute willful and wanton misconduct." *Id.* § 3.150(a).

¶ 68 Further, section 3.10 provides a comprehensive scope of various services. Relevant here, subsection (g) provides as follows:

"(g) 'Non-emergency medical services' means medical care, clinical observation, or medical monitoring rendered to patients whose conditions do not meet this Act's definition of emergency, before or during transportation of such patients to or from health care facilities visited for the purpose of obtaining medical or health care services which are not emergency in nature, using a vehicle regulated by this Act." *Id.* § 3.10(g).

¶ 69 The EMS Act also provides that any person currently licensed as an EMT-B may perform "non-emergency medical services as defined in this Act" (*id.* § 3.55(a)), including "non-emergency medical transport situations" (*id.* § 3.55(b)). Pursuant to the EMS Act, the Illinois Department of Public Health is responsible for regulating ambulances and other emergency vehicles, including their operation standards. *Id.* § 3.85.

¶ 70 Before this court, defendants contend that this plain statutory language does not contain any conditions or limitations as to driving an ambulance to pick up a patient for transport to or from a health care facility. Thus, according to defendants, section 3.150(a) of the EMS Act immunizes Nicholas's conduct occurring both before and during "actual transport of the patient inside the ambulance." On the other hand, plaintiff argues that, at the time of the accident, the only activity that Nicholas performed was "the operation of a vehicle, unrelated and independent of any scope of medical services described under the Act" and that "[d]riving an ambulance to a health care facility, by itself, does not fall within the scope of nonemergency medical services and the Act." I agree with defendants.

¶ 71 The plain language of section 3.150(a) clearly provides, in relevant part, that persons who in good faith provide nonemergency medical services in the normal course of conducting their duties shall not be civilly liable as a result of their acts or omissions in providing such services unless such acts or omissions constitute willful and wanton misconduct. *Id.* § 3.150(a). The statutory language does not "define or limit act or omission. Rather, the statute broadly declares that a person

- 19 -

shall not be civilly liable as a result of their acts or omissions in providing nonemergency services." *Wilkins*, 2013 IL 114310, ¶ 20; see *Abruzzo*, 231 Ill. 2d at 337 (section 3.150(a) broadly encompasses medical services in response to a nonemergency).

¶ 72 Also, the plain language of section 3.10(g) of the EMS Act clearly defines nonemergency medical services, in pertinent part, as medical care "rendered to [nonemergency] patients *** before or during transportation of such patients to or from health care facilities." *Id.* § 3.10(g).

¶ 73 My colleagues in the majority "find it would be impossible to render any medical care, clinical observations, or medical monitoring prior to arriving at the scene." *Supra* ¶ 37. However, this conclusion overlooks the fact that a common definition of "render" is to "deliver." Webster's Third New International Dictionary 1922 (1993); Merriam-Webster's Collegiate Dictionary 1054 (11th ed. 2020) ("to transmit to another: DELIVER"); accord Black's Law Dictionary 1487 (10th ed. 2014) ("To transmit or deliver ***."); 54 C.J. 378 (1931) ("to deliver").

¶ 74 The majority's construction of section 3.10(g) overlooks this accepted definition of the word "render." "In giving meaning to the words and clauses of a statute, no part should be rendered superfluous." *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 25; see *Rushton v. Department of Corrections*, 2019 IL 124552, ¶ 14 ("No part of a statute should be rendered meaningless of superfluous."); *Lake County Grading Co. v. Village of Antioch*, 2014 IL 115805, ¶ 27 (same); *In re Detention of Stanbridge*, 2012 IL 112337, ¶ 72 (same); *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 368-69 (2009) (same).

¶ 75 At the time of the instant accident, Nicholas was rendering nonemergency medical services in the normal course of conducting his duties and within his statutorily prescribed scope of practice. While he was responding to the dispatch, as regulated by the EMS Act, Nicholas was literally in the process of delivering or transmitting medical care.

¶ 76 In this case, however, the appellate court concluded that the immunity for rendering nonemergency medical services provided by section 3.150(a), when considered together with section 3.10(g), is "statutorily limited to medical services rendered to patients *during transportation* to health care facilities." (Emphasis in

original.) 2019 IL App (1st) 180696, ¶ 19. In every quotation of and reference to section 3.10(g), the appellate court obviously and inexplicably omitted the word "before" and relied on the word "during." See *id.* ¶¶ 13, 17-19. Having thus rewritten section 3.10(g), the appellate court concluded that section 3.150(a) does not immunize defendants from liability for negligence because defendants' ambulance was not transporting a patient to a health care facility "during" the time of the accident. *Id.* ¶ 19. Indeed, based on its revision of section 3.10(g), the appellate court reasoned:

> "Had the legislature intended to provide immunity for the negligence of an ambulance driver while en route to pick up a patient for transport as suggested by the defendants, it could have included the activity within the definition of 'non-emergency services.' The legislature did not include the activity within the definition of non-emergency medical services, and we are not at liberty to do so under the guise of statutory construction." *Id.* ¶ 18.

¶ 77     This reasoning is faulty because it fails to recognize that section 3.10(g) expressly refers to medical services rendered "before" transport. The appellate court's construction of section 3.10(g), which literally deleted the word "before," departed from the plain language by reading into the statute exceptions, limitations, or conditions that conflict with the clearly expressed legislative intent. See *Beggs v. Board of Education of Murphysboro Community Unit School District No. 186*, 2016 IL 120236, ¶¶ 52, 59 (appellate court ignored plain statutory language that clearly indicated legislative intent); *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 23 (appellate court's narrow construction of statute overlooked plain statutory language); *People ex rel. LeGout v. Decker*, 146 Ill. 2d 389, 394-95 (1992) (same). The appellate court erred by straying from this basic rule of statutory construction.

¶ 78     My colleagues in the majority characterize as "unfortunate" the appellate court's omission of the word "before" in that court's quotation of section 3.10(g)'s definition of nonemergency medical services. Nevertheless, the majority concludes that it would "contort the statutory language beyond recognition" to hold that medical care rendered to patients "may include the mere nonintegral act of driving many miles from the patient." *Supra* ¶ 35.

¶ 79 If I accepted the majority's construction of section 3.10(g) of the EMS Act, I would be attributing to the provision a meaning other than that expressed by its language. See *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 190 (1990). This I cannot do. A court will enforce clear and unambiguous statutory language as it is written and will not read into the statute exceptions, conditions, or limitations that the legislature did not express. *Manago*, 2017 IL 121078, ¶¶ 10, 33; *Beggs*, 2016 IL 120236, ¶ 52. For example, this court has generally refused to insert into the various provisions of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1-101 *et seq.* (West 2018)) conditions or limitations that the legislature did not express in plain statutory language. *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 490-95 (2001) (collecting cases).

¶ 80 Relying on this principle, we concluded in *Wilkins* that section 3.150(a) of the EMS Act does not distinguish between patients and third parties and, therefore, does not limit immunity only to patients. *Wilkins*, 2013 IL 114310, ¶ 22. We also concluded that section 3.150(a) does not distinguish between ambulances operating under lights and siren and those not operating under lights and siren and, therefore, does not limit immunity only to ambulances driving under lights and siren. *Id.* ¶¶ 54-55. In *Wilkins*, we concluded that, absent willful and wanton misconduct, "[t]he statutory language in the EMS Act is clear that any person who in good faith provides nonemergency medical services in the normal course of conducting their duties shall not be civilly liable as a result of their acts or omissions in providing such services." *Id.* ¶ 59.

¶ 81 In the case at bar, the accident occurred during Nicholas's response to the dispatch, as regulated by the EMS Act, and before transporting the patient to or from a health care facility. Based on its plain statutory language, the immunity provision of the EMS Act applied to defendants and was triggered at the time Nicholas and his partner were dispatched to provide nonemergency services. See 210 ILCS 5/3.10(g), 3.150(a) (West 2016). Our rules of statutory construction do not permit us to ignore words ("before" transportation) or to add new limitations or triggering acts to section 3.10(g) that the legislature did not specifically incorporate into the statute. In short, the majority's "textually unsupported and unnecessarily narrow reading of the statute fails to comport with our traditional construction rules." See *Cassidy v. China Vitamins, LLC*, 2018 IL 122873, ¶ 22. Because nothing in the plain language of the EMS Act supports the majority's narrow

construction that the immunity provision is not triggered until the EMT actually reaches the patient, I decline to adopt that view. However, even assuming the plain language of the EMS Act is not sufficiently clear to immunize defendants, my conclusion is confirmed by the broad construction of the EMS Act's immunity provision established in our case law. See *Wilkins*, 2013 IL 114310, ¶ 30 (recognizing "the broad scope of the EMS Act, as well as the broad language in the immunity provision"); *Abruzzo*, 231 Ill. 2d at 341 (EMS Act's comprehensive scope supports broad construction of the immunity provision).

¶ 82                      B. Broad Construction of EMS Act Immunity

¶ 83      The appellate court did not discuss our broad construction of EMS Act immunity in *American National Bank*, 192 Ill. 2d 274, and *Abruzzo*, 231 Ill. 2d 324. Indeed, the appellate court did not even mention this case law anywhere in its decision.

¶ 84      In *American National Bank*, this court construed a previous version of section 3.150(a) of the EMS Act (210 ILCS 50/17(a) (West 1994)). *American National Bank*, 192 Ill. 2d 274. In that case, the complaint alleged as follows. The decedent suffered an asthma attack at her apartment and called 911. She gave the 911 operator her address, telephone number, and apartment location in her building. Upon arrival, the paramedics located her apartment and knocked on the front door but received no response. Paramedics knocked on the back door but did not receive a response there either. Paramedics confirmed that they were at the correct location, concluded that they were not needed, and left the scene. Later that day, the same paramedics returned to the apartment building, a man let them into the apartment, and they found the decedent on the floor. The front door of the apartment was unlocked. The complaint alleged that the paramedics acted negligently, willfully, and wantonly in failing to attempt to open the door and enter the apartment. *Id.* at 276-77.

¶ 85      The plaintiff contended that "section 17(a) [(now section 3.150(a))] applies only when paramedics have actually rendered life support treatment to a patient" and that "the failure of the responding paramedics *** to administer any treatment at all to the decedent means that the provision has no application here." *Id.* at 282.

¶ 86    This court rejected the plaintiff's argument. We did not believe that the scope of section 17(a) was as narrow as the plaintiff believed it to be. We concluded that the immunity provision of the EMS Act applied in that case even though the defendants' alleged acts and omissions did "not relate to the actual rendition of life support treatment." *Id.* at 283. We construed the EMS Act immunity provision to cover preparatory conduct integral to providing life support services. *Id.* We reasoned that locating the patient is the first step in providing life support services. *Id.* at 283, 286. We recognized that the EMS Act's regulation of matters such as communications, response time, and ambulance operation standards revealed the broad scope of the immunity provision. *Id.* at 283.

¶ 87    In *Abruzzo*, 231 Ill. 2d 324, this court examined a subsequent version of the EMS Act (210 ILCS 50/1 *et seq.* (West 2004)). We repeated that "[o]ur interpretation of the EMS Act immunity provision in *American National Bank* remains valid. That provision has been interpreted broadly to include preparatory actions integral to providing emergency treatment." *Id.* at 345. We held that the EMS Act immunized emergency personnel who allegedly failed to properly assess and evaluate the patient. *Id.*

¶ 88    The majority purports to distinguish *American National Bank* and *Abruzzo* for two reasons. First, the majority observes that those cases involved the failure to provide emergency services to a patient upon arrival at the scene of a residence. However, according to the majority, the present case involves an ambulance en route to the scene on a nonemergency transport and, further, neither *American National Bank* nor *Abruzzo* required the construction of the term "nonemergency services." *Supra* ¶¶ 27-28.

¶ 89    This purported distinction fails. The *American National Bank* court construed a prior version of the EMS Act that immunized any authorized person or entity who " 'provides life support services.' " *American National Bank*, 192 Ill. 2d at 281 (quoting 210 ILCS 50/17(a) (West 1994)). The legislature subsequently amended the EMS Act, changing the term "life support services" to " 'emergency or non-emergency medical services.' " *Abruzzo*, 231 Ill. 2d at 333-34 (quoting 210 ILCS 50/3.150(a) (West 2004)).

¶ 90    The *Abruzzo* court rejected the very distinction that the majority here purports to make. We concluded: "The phrase 'emergency or non-emergency medical

- 24 -

services' is broader in scope because it includes both emergency and nonemergency services. Thus, the substitution of 'emergency or non-emergency medical services' for 'life support services' cannot provide a basis for giving the immunity provision a narrower meaning." *Id.* at 337.

¶ 91    Therefore, section 3.150(a) of the EMS Act, which provides immunity from civil liability for negligence, makes no distinction between providing emergency or nonemergency services. As we concluded in *Wilkins*: "the statute broadly declares that a person shall not be civilly liable as a result of their acts or omissions in providing nonemergency medical services." *Wilkins*, 2013 IL 114310, ¶ 20; see *Abruzzo*, 231 Ill. 2d at 337 (section 3.150(a) broadly encompasses medical services in response to a nonemergency).

¶ 92    Second, the majority maintains that neither *American National Bank* nor *Abruzzo* "specifically defined what was meant by preparatory conduct that is integral." *Supra* ¶ 31. The majority posits that "the mere act of driving to a pickup location for a nonemergency transport" does not constitute such immunized conduct. *Supra* ¶ 30. Rather, the majority points to *American National Bank*, in which we stated: "Locating a person in need of emergency medical treatment is the first step in providing life support services." *American National Bank*, 192 Ill. 2d at 286. Latching onto the phrase "first step" in this single sentence, the majority reasons: "then it follows that the simple act of driving many miles before reaching the scene of a nonemergency transport cannot be integral preparatory conduct that triggers the immunity involved in rendering nonemergency medical care to a patient." *Supra* ¶ 32. The majority concludes that "the preparatory actions contemplated by our case law begin at the scene with the attempt to locate the patient." *Supra* ¶ 37.

¶ 93    I disagree. While the appellate court did not even mention *American National Bank* and *Abruzzo*, the majority overlooks how broadly we construed EMS Act immunity in those decisions.

¶ 94    In *American National Bank*, we reasoned that the EMS Act's broad scope is evidenced by its regulation of matters such as communications, response time, and ambulance operation standards. *American National Bank*, 192 Ill. 2d at 283. The aforesaid areas of the EMS Act's regulation come into play *before* an ambulance arrives, in the majority's words, "at the scene." Thus, the EMS Act regulates—and

immunizes—the "first step" of locating the patient, which begins with receiving a dispatch and includes operating an ambulance in a timely manner within operation standards.

¶ 95     In *Abruzzo*, after examining several provisions of the EMS Act as it then existed, including section 3.10(g), this court described "the broad scope of the EMS Act" and observed that "[t]he EMS Act continues to regulate expansively the delivery of emergency medical services in Illinois." *Abruzzo*, 231 Ill. 2d at 339. This court then noted additional provisions "directed at accomplishing the broad purpose of planning, delivering, evaluating, and regulating emergency medical services." *Id.* We specifically observed that the EMS Act authorizes the state Department of Public Health to require medical services systems "to adopt written protocols for transporting patients to hospitals. 210 ILCS 50/3.20(c) (West 2004)." *Id.* at 340. We further observed:

> "The EMS Act provides for licensing of EMTs, the scope of their practice, and their training and continuing education. 210 ILCS 50/3.50, 3.55, 3.65 (West 2004). *** The Act also provides for training, certification, continuing education, and overall regulation of emergency medical dispatchers. 210 ILCS 50/3.70 (West 2004). The Department is responsible for regulating ambulances and other emergency vehicles, including their design, specifications, equipment and staffing requirements, and operation and maintenance standards. 210 ILCS 50/3.85 (West 2004)." *Id.* at 340-41.

¶ 96     After this thorough review, we concluded that the EMS Act is

> "a comprehensive, omnibus source of rules governing the planning, delivery, evaluation, and regulation of emergency medical services in Illinois. Our broad construction of the immunity provision in *American National Bank* to include preparatory conduct integral to providing emergency treatment continues to be supported by the EMS Act's comprehensive scope." *Id.* at 341.

¶ 97     Also, in *Wilkins*, we discussed *Abruzzo* and recognized "the broad scope of the EMS Act, as well as the broad language in the immunity provision." *Wilkins*, 2013 IL 114310, ¶ 30.

¶ 98 Thus, our case law has established that, absent willful and wanton misconduct, the EMS Act provides immunity for acts and omissions that occur during preparatory conduct integral to providing medical services and prior to the actual pickup and transport of the patient. *Abruzzo*, 231 Ill. 2d at 345; *American National Bank*, 192 Ill. 2d at 283.

¶ 99 The judicial construction of a statute effectively becomes part of the statute itself. *Heelan*, 2015 IL 118170, ¶ 19. Relatedly, statutory provisions that have been judicially construed keep their same meaning in any subsequent amendments, absent a clear legislative intent to the contrary. *Harris Trust & Savings Bank v. Village of Barrington Hills*, 133 Ill. 2d 146, 155 (1989); see *R.D. Masonry, Inc. v. Industrial Comm'n*, 215 Ill. 2d 397, 403-04 (2005). Thus, a change in judicial construction would amount to amending the statute itself, which is a power courts do not possess. *Froud v. Celotex Corp.*, 98 Ill. 2d 324, 336 (1983) (citing *Union Electric Co. v. Illinois Commerce Comm'n*, 77 Ill. 2d 364, 381 (1979)).

¶ 100 When this court specifically construed the immunity provision of the EMS Act in *Abruzzo*, we stated as follows:

"In *American National Bank*, we rejected the argument that the immunity provision applied only when treatment was actually administered to a patient. [Citation.] Instead, we held that the immunity provision encompassed preparatory conduct integral to providing emergency treatment. [Citation.] Our interpretation is considered part of the statute itself until the legislature amends it contrary to that interpretation." *Abruzzo*, 231 Ill. 2d at 343.

¶ 101 In the case at bar, I need not only presume that the General Assembly has acquiesced in our broad construction of the EMS Act's immunity provision. Rather, legislative adoption of our construction is especially clear given an amendment to section 3.10(g).

¶ 102 In *Abruzzo*, this court construed the EMS Act as it existed in 2004. We observed that section 3.10(g) defined "non-emergency medical care" "to include medical services given to patients *during* transportation to health-care facilities to obtain nonemergency services." (Emphasis added.) *Id.* at 337; see 210 ILCS 50/3.10(g) (West 2004) (defining nonemergency medical care as medical services rendered to patients "during transportation of such patients to health care facilities"). We

nevertheless construed section 3.150(a) broadly to include "preparatory conduct integral to providing emergency treatment." *Abruzzo*, 231 Ill. 2d at 343.

¶ 103     In 2005, the General Assembly enacted Public Act 94-568, which amended section 3.10(g). Pub. Act 94-568 (eff. Jan. 1, 2006) (amending 210 ILCS 50/3.10(g)). As amended, section 3.10(g) defines nonemergency medical services to include medical care rendered to patients "*before or* during transportation of such patients to *or from* health care facilities." (Emphases added.) 210 ILCS 50/3.10(g) (West 2016). Knowing that this court had already construed the EMS Act to include "preparatory conduct integral" to providing medical services, the legislature codified this construction by expanding the definition expressly to include medical services rendered *before* transportation.

¶ 104     Thus, I return to the plain language of the statute. The appellate court erred by reading a condition or limitation into the immunity provision of the EMS Act that does not exist. "There is no rule of construction that authorizes a court to declare that the legislature did not mean what the plain language of the statute imports." *Wilkins*, 2013 IL 114310, ¶ 22; *LeGout*, 146 Ill. 2d at 394.

¶ 105     I note plaintiff's argument that section 3.10(h) of the EMS Act "expressly excludes the use of an ambulance." Section 3.10(h) provides: "The provisions of this Act shall not apply to the use of an ambulance or SEMSV [(specialized emergency medical service vehicle)], unless and until emergency or non-emergency medical services are needed during the use of the ambulance or SEMSV." 210 ILCS 50/3.10(h) (West 2016). According to plaintiff, "the legislature distinguished the use of an ambulance from the provision of non-emergency medical services." Plaintiff argues that "[u]nder section 3.10(h), the use of an ambulance is outside the scope of the [EMS] Act 'unless and until' non-emergency medical services are provided 'during' its use. Non-emergency medical services are not needed 'during' the use of the ambulance until the patient is on board."

¶ 106     Again, plaintiff's argument invites us to add a condition or limitation to the immunity provision of the EMS Act that does not exist. This we cannot do. *Wilkins*, 2013 IL 114310, ¶ 55. Further, section 3.10(h) was part of the EMS Act when this court in *Abruzzo* construed it to immunize "preparatory conduct integral" to providing nonemergency medical care. *Abruzzo*, 231 Ill. 2d at 341, 345. Subsection

(g) plainly defines nonemergency medical services as such services rendered to patients "before or during" transportation. 210 ILCS 50/3.10(g) (West 2016). Section 3.10(h) makes clear that the use of an ambulance is outside of the EMS Act's protection when emergency or nonemergency medical services are not needed. As this court observed in *Wilkins*, "[i]t is clear that section 3.150(a) immunity extends only to those providing emergency or nonemergency medical services, which would not include driving to and from work." *Wilkins*, 2013 IL 114310, ¶ 58.

¶ 107    Notably, *amicus* supporting plaintiff's position acknowledges that, in *Abruzzo*, this court broadly construed section 3-150(a) of the EMS Act "to include preparatory conduct integral to providing emergency treatment." *Abruzzo*, 231 Ill. 2d at 341. However, *amicus* "urge[s] this Court to reconsider that view because it is wholly unsupported by the language of the EMS Act." Although not requested by plaintiff himself, the *amicus* requests that we overrule *American National Bank* and *Abruzzo*. Although the majority opinion does not totally overrule *American National Bank* and *Abruzzo*, this court now incorporates into the EMS Act conditions and limitations that the legislature did not express. This the court may not do. See, *e.g.*, *Moon v. Rhode*, 2016 IL 119572, ¶ 22.

¶ 108                              C. Public Policy

¶ 109    The majority concludes as follows:

"In using the term 'before or during transportation' in its definition of 'non-emergency medical care,' we believe that the legislature envisioned paramedics locating patients, who are subject to the nonemergency transport at the pickup location, assessing their condition, perhaps transporting them on a gurney to lift them into the ambulance, and rendering other preparatory conduct that is integral to providing medical care at the scene." *Supra* ¶ 38.

The majority reasons that "[a]ny other interpretation would not make sense." *Supra* ¶ 37.

¶ 110    Had the General Assembly so intended, it could have expressly included such a restriction in section 3.10(g) of the EMS Act. However, the legislature did not do

so. See *LeGout*, 146 Ill. 2d at 395. The fact that EMS Act immunity applies to this case is neither absurd nor impossible to understand. " 'The threat of impending liability either in tort or by way of contribution is detrimental to the ability of medical personnel to effectively perform their duties.' " *Wilkins*, 2013 IL 114310, ¶ 25 (quoting *Brock v. Anderson Road Associates*, 301 Ill. App. 3d 168, 174 (1998)). Providing for EMS Act immunity here does not indicate that the legislature acted irresponsibly or justify applying the EMS Act's immunity provision in a manner that its plain language does not support. See *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 95 Ill. 2d 211, 220 (1983).

¶ 111     The responsibility for the justice or wisdom of legislation rests upon the legislature. *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 394 (1998). A court must interpret and apply statutes in the manner in which they are written. A court must not rewrite statutes to make them consistent with the court's idea of orderliness and public policy. *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 406 (2010).

¶ 112     The legislative concerns that led to the enactment of the EMS Act are diverse. In section 2 of the EMS Act, the legislature expressly stated its intent that the EMS Act establish "a central authority responsible for the coordination and integration of all activities within the State concerning *** non-emergency medical transports" and also "to provide minimum standards for the statewide delivery of EMS services." 210 ILCS 50/2 (West 2016). Our broad construction of the immunity provision of the EMS Act continues to be supported by its comprehensive scope. *Abruzzo*, 231 Ill. 2d at 341.

¶ 113     Our role in construing the EMS Act "obviously is not to decide what the legislative design should be." *In re Griffin*, 92 Ill. 2d 48, 52 (1982). This court is not tasked with evaluating and setting public policy; that job is reserved for our duly elected legislature. Indeed, we lack any objective standards or procedures to assist us in weighing the relative merits of such widely divergent public policy interests. The legislature alone possesses the necessary investigative and fact-finding abilities. *Manago*, 2017 IL 121078, ¶ 13. This court shall not insert or ignore words in legislative enactments when the statute otherwise presents a cogent and justifiable legislative scheme. *Waste Management of Illinois, Inc. v. Illinois Pollution Control Board*, 145 Ill. 2d 345, 348 (1991). Thus, where the legislature

has not chosen to impose the condition or limitation envisioned by the majority, it is "wholly improper for this court to substitute its judgment for that of the only branch of government constitutionally authorized to make such choices." *City of East St. Louis v. East St. Louis Financial Advisory Authority*, 188 Ill. 2d 474, 486 (1999).

¶ 114    In the case at bar, at the time of the accident, Nicholas was rendering nonemergency medical services in the normal course of conducting his duties. Nicholas was in the process of responding to a dispatch to transport a patient to a health care facility. Driving to the patient was preparatory for and integral to delivering the medical service. Further, the accident occurred before transporting the patient to a health care facility and during defendant's driving in response to the dispatch. Therefore, absent willful and wanton misconduct, section 3.150(a) of the EMS Act immunizes defendants for their alleged negligent acts or omissions while providing nonemergency medical services.

¶ 115    The Illinois Constitution vests the legislative power in the General Assembly. Ill. Const. 1970, art. IV, § 1. " 'It is the dominion of the legislature to enact laws and it is the province of the courts to construe those laws. We can neither restrict nor enlarge the meaning of an unambiguous statute.' " *Riseborough*, 2014 IL 114271, ¶ 23 (quoting *Petersen v. Wallach*, 198 Ill. 2d 439, 448 (2002)); see *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 510 (2006) ("This court may not legislate, rewrite or extend legislation."); *Henrich*, 186 Ill. 2d at 394 (and cases cited therein) (same). If the General Assembly disagrees with this court's construction of the immunity provision of the EMS Act, that institution is vested with the power to amend the statute.

¶ 116                                III. CONCLUSION

¶ 117    For the foregoing reasons, I would hold that the circuit court correctly dismissed counts I and III of plaintiff's first amended complaint and that the appellate court erred in reversing the dismissal. Therefore, I respectfully dissent.

¶ 118    CHIEF JUSTICE ANNE M. BURKE and JUSTICE GARMAN join in this dissent.