2023 IL App (1st) 231751B-U

No. 1-23-1751B

Order filed December 7, 2023

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| vs. | ) ) | No. 23 CR 8164 |
| MARQUIS ODOM, | ) ) | Honorable Thomas J. Hennelly, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Justices Hoffman and Ocasio III concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's findings that no less restrictive conditions would reasonably ensure the defendant's presence in court was an abuse of discretion, and the court's order of electronic monitoring is reversed. The trial court did not err in failing to hold a hearing within 48 hours of Odom's detention due to his EM ineligibility. The court did not improperly consider the evidence the State presented at the hearing on its petition, where that information would have been elicited at the pretrial detention hearing irrespective of the State's filing.

¶ 2    Defendant-appellant, Marquis Odom, appeals the circuit court's orders imposing conditions of pretrial release, pursuant to Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023). Odom was arrested and indicted prior to the effective date of Public Act 101-652 (eff. Jan. 1,

2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act).[1] For the following reasons, we reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4        Odom was arrested on March 5, 2023 and charged by complaint with unlawful use of a weapon by a felon (UUWF) and aggravated unlawful use of a weapon (AUUW). 720 ILCS 5/24-1.1(a), 24-1.6(a)(2) (West 2022). He was released from custody the next day on a $5000 D Bond with special conditions.[2] The State dismissed the charges against Odom two months later. However, a grand jury indicted Odom on July 24, 2023 with (1) one count of UUWF based on a prior AUUW conviction; (2) one count of AUUW without a firearm Concealed Carry License (CCL) based on a prior conviction; and (3) one count of AUUW without a valid Firearm Owner's Identification (FOID) card, with a prior conviction. See 720 ILCS 5/24-1.1(a), 24-1.6(a)(1) (West 2022). Upon learning of the indictment via letter, Odom appeared in circuit court on August 9. Odom was subsequently arraigned on September 13 and the case was set for a pretrial detention hearing on September 20, 2023.

¶ 5        Pursuant to sections 5/110-2 and 5/110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-2, 110-6.1 (West 2022)), the State filed a verified petition to deny pretrial release on September 20, two days after the Act became effective. See *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay of pretrial release provisions and setting an effective date of Sept. 18, 2023); Pub. Acts 101-652, § 10-255, 102- 1104, § 70 (eff. Jan. 1, 2023). The petition alleged that Odom committed an eligible offense as listed in section 5/110-6.1 of the Code and that Odom

---

[1]"The Act has also sometimes been referred to in the press as the Pretrial Fairness Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or public act." *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n. 1.
[2]The court placed Odom on home electronic monitoring with leave allowed for school and work.

posed "a real and present threat to the safety of any person or persons in the community." Specifically, the State relayed that:

> "Officers observed [Odom] enter a gas station with a bulge in his jacket pocket and waited outside for [Odom] to exit. When [Odom] failed to do so, the officers entered the gas station and observed the handle of a handgun protruding from [Odom's] jacket pocket. The loaded, semi-automatic handgun was recovered and [Odom] admitted to carrying the weapon for protection. [Odom] has a prior conviction for [AUUW]."

¶ 6    The court conducted a hearing on the motion that same day. Defense counsel argued that the State's petition was untimely pursuant to the Act, as it was filed outside the 21 day deadline mandated by the Code. The court denied counsel's objection, noting that the law had only gone into effect the prior Monday. The State argued—based on its proffer of the crime and Odom's prior felony conviction—that the presumption is great that Odom committed the crime and was a danger to others. Defense counsel argued the petition should be denied and requested that Odom, a 28-year-old single father who works and goes to school, instead be released with conditions. The court denied the State's motion for pretrial detention, finding that Odom had not been demonstrated to be a danger as alleged in the petition, and consequently ordered Odom to be released on electronic monitoring (EM) pending trial. Defense counsel then asked the court if it would consider pretrial home confinement, and the court responded that it would consider expanding his hours on EM for work but noted that it was "not going to put him on pretrial release[,] not with a prior gun conviction." The court's written order detailed that "no less restrictive condition of release or combination of less restrictive condition[s] of release would reasonably ensure the appearance of defendant for later hearings or protect an identifiable person or persons from imminent threat of serious physical harm."

¶ 7        Six days later, on September 25, Odom filed a "Motion to Advance to Grant Pretrial Release," informing the court that he had yet to be released from custody and placed on EM because he lacked a qualifying residence. He requested the court reconsider his conditions of release and argued that the least restrictive conditions to ensure his presence in court would be no conditions. Three days later, the court heard argument on Odom's motion. Defense counsel argued the record was clear that Odom was compliant in coming to court at every date, that he had not committed any new crimes, and that he appeared in court in response to a letter he received after he was indicted. The State noted that a "full-blown detention hearing" was held on the prior court date and stood by its petition for detention. In its ruling, the court noted that it was considering Odom's motion as a motion to modify the conditions of pretrial release and stated:

> "[a]ll the factors that were presented to the Court this morning by the petitioner[,] the Court took into consideration in determining whether or not to grant or deny pretrial release. However, given the facts of the case and Mr. Odom's background, I do not believe as I did at the time that anything short of electronic monitoring would be appropriate as a condition for pretrial release."

That same day, Odom filed a timely notice of appeal.

¶ 8                                    II. ANALYSIS

¶ 9        On appeal, Odom argues the trial court violated the plain language of the Act in that it allowed the State to file an untimely petition and failed to "hold the requisite 48-hour hearing" upon his continued detention. Further, Odom alleges that the trial court failed to "adhere to the Act's mandate to not use Odom's ineligibility for EM at the time as a justification for pretrial detention." Alternatively, Odom contends that the circuit court erred in finding that the State proved, by clear and convincing evidence, that Odom was a threat to the safety of any person or persons or the community, and that there were no lesser conditions that could mitigate that threat.

¶ 10       The State counters that the issue of the timeliness of its petition is moot, as the trial court denied the petition. Alternatively, they argue that the Act only became effective on September 18 and the legislature could not have intended a literal reading of the timing requirements in section 5/110-6.1(c) of the Code in governing events that occurred prior to the effective date. The State argues that section 5/110-5(e) of the Code does not require a hearing to be held until the court is aware of a defendant's continued detention and similarly does not require a hearing to be held within 48 hours of the court's notification. Last, the State contends that the trial court did not abuse its discretion in determining that EM was an appropriate condition of release.

¶ 11       In considering this appeal, this court has reviewed the following documents which Odom and the State have submitted under Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023): (1) Odom's notice of appeal pursuant to the Act, (2) the supporting record, (3) Odom's supporting memorandum, and (4) the State's response to Odom's memorandum.

¶ 12                           A. Timeliness of the Petition

¶ 13       Odom first argues that the State's petition to deny pretrial release was untimely and that the trial court did not have the authority to order his release on EM pursuant to the untimely petition. As the first issue in this appeal presents a narrow issue relevant solely to those defendants arrested or indicted prior to the effective date of the Act —but who had not yet had a hearing on pretrial release—we note that the finding on this issue is not applicable to defendants arrested on or after the effective date of the Act.

¶ 14       In the instant case, Odom was first arrested on March 5, 2023 and released on a monetary bond and EM. The State thereafter dropped the charges against Odom and he was later indicted, appearing before the court for the first time in this case on August 9. He was arraigned on September 13. The State filed its petition on September 20. Section 5/110-6.1(c)(1) of the Code mandates the timing of a petition to detain as follows:

"A petition may be filed without prior notice to the defendant at the first appearance before a judge, or within the 21 calendar days, except as provided in Section 110-6, after arrest and release of the defendant upon reasonable notice to defendant; provided that while such petition is pending before the court, the defendant if previously released shall not be detained." 725 ILCS 5/110-6.1(c)(1) (West 2022).

¶ 15        Odom argues that regardless of which date is used to calculate the petition's timing, the State's petition was untimely. The State counters that the issue is moot because the circuit court denied its petition. In any event, the State argues, the detention petition was filed within two days of the effective date of the Act and the legislature provided for the State's Attorney's ability to promptly file a verified petition for persons who were arrested prior to the effective date of the act.

¶ 16        We need not address whether the State's petition for detention complied with the Act's filing requirements since the petition was denied. It is undeniable that Odom first appeared before the court in this case on August 9; however, he was not arraigned until September 13. On that date the court—at Odom's request—set a hearing date of September 20 for a pretrial release hearing. The court had yet to hold a hearing on Odom's pretrial release status at the time the State filed its detention petition. Regardless of whether the State had filed a petition on that date, the court was set to consider Odom's release pending trial. Following argument, the court denied the State's petition but decided that EM was an appropriate condition for pretrial release. Notwithstanding Odom's contentions otherwise, the trial court did not improperly consider the evidence the State presented at the hearing on its petition, where that information would have been elicited at the pretrial detention hearing irrespective of the State's filing.

¶ 17                                B. 48-Hour Hearing

¶ 18        Odom next argues that the circuit court failed to "hold the requisite 48-hour hearing" upon his continued detention. Further, Odom alleges that the trial court used Odom's ineligibility for

EM as a justification to detain him, in violation of the Act's mandates. The State responds that section 5/110-5(e) of the Code does not require a hearing to be held until the court is aware of a defendant's continued detention and similarly does not require a hearing to be held within 48 hours of the court's notification. We agree with the State's interpretation of the statute.

¶ 19   When we interpret a statute, our primary objective is to ascertain and give effect to the legislature's intent. *Hernandez v. Lifeline Ambulance, LLC*, 2020 IL 124610. The best indication of the legislature's intent is the plain language of the statute itself. *Id.* When the language of the statute is clear and unambiguous, we must apply it as written, *id.*, without resorting to further aids of statutory construction, *Cothron v. White Castle System, Inc.*, 2023 IL 128004, ¶ 20. We may also consider the consequences that would result from construing the statute one way or the other, and, in doing so, we presume that the legislature did not intend absurd, inconvenient, or unjust consequences. *DiFranco v. Fallon*, 2023 IL App (1st) 220785, ¶ 68 (citing *Home Star Bank and Financial Services v. Emergency Care and Health Organization, Ltd.*, 2014 IL 115526, ¶ 24).

¶ 20   According to well-established principles of statutory interpretation, we must construe a statute so that all the language used in the statute is given effect and so that no word, clause, or sentence is "rendered meaningless, superfluous or insignificant." (Internal quotation marks omitted.) *People v. Jones*, 397 Ill. App. 3d 651, 657 (1st Dist. 2009). *See also Blum v. Kostner*, 235 Ill. 2d 21, 44 (2009) ("we construe the statute to avoid rendering any part meaningless or superfluous"); *Crawford supply Co. v. Schwartz*, 396 Ill. App. 3d 111, 117 (1st Dist. 2009).

¶ 21   Section 5/110-5(e) of the Code mandates:

> "If a person remains in pretrial detention 48 hours after having been ordered released with pretrial conditions, the court shall hold a hearing to determine the reason for continued detention. If the reason for continued detention is due to the unavailability or the defendant's ineligibility for one or more pretrial conditions previously ordered by the court

or directed by a pretrial services agency, the court shall reopen the conditions of release hearing to determine what available pretrial conditions exist that will reasonably ensure the appearance of a defendant as required, the safety of any other person, and the likelihood of compliance by the defendant with all the conditions of pretrial release. The inability of the defendant to pay for a condition of release or any other ineligibility for a condition of pretrial release shall not be used as a justification for the pretrial detention of that defendant." 725 ILCS 5/110-5(e) (West 2022).

¶ 22 Under the plain language of this section, a defendant is clearly entitled to a hearing if they remain in pretrial detention 48 hours after having been ordered released with pretrial conditions. However contrary to Odom's assertion, the statute as drafted contains no requirement mandating the court to hold a hearing *within* 48 hours of his detention. Neither does the statute state that a defendant is entitled to a hearing within 48 hours of his formal request for a section 5/110-5(e) hearing. To read into the statute these requirements would most certainly result in illogical and inconvenient results. Instead, the statute simply states the court *shall* hold a hearing to determine the reason for continued detention but does not mandate a specific timing requirement for such a hearing. Here, the court was informed on September 25, through Odom's "Motion to Advance to Grant Pretrial Release," that Odom had been in custody due to his lack of an acceptable EM residential address. Three days later, the court held the requisite hearing to determine Odom's reason for continued detention. We note that it is unreasonable to conclude that the court should have held a hearing within 48 hours of Odom's detention when Odom himself did not inform the court of such detention until *five days* after the court issued its EM order. We find Odom properly received the hearing he was entitled to pursuant to Section 5/110-5(e).

¶ 23 Odom additionally alleges that the trial court failed to adhere to Section 5/110-5(e)'s mandate to not use his ineligibility for EM "as a justification for [his] pretrial detention." The

record before us indicates that the court did not improperly use Odom's inability to acquire EM release as a justification to detain Odom in custody. Rather, in ordering EM for Odom, the court determined that no less restrictive conditions "would reasonably ensure the appearance of defendant for later hearings or protect an identifiable person or persons from imminent threat of serious physical harm." Plainly, the court did not use Odom's ineligibility for a condition of EM as a reason to order Odom detained. The court did not order Odom detained and Odom was in fact released on EM once he was able to meet the requisite residence conditions.

¶ 24                    C. Trial Court's Pretrial Release Orders

¶ 25        Odom contends the trial court erred in determining that the State proved by clear and convincing evidence that any conditions of pretrial release were necessary. Specifically, Odom highlights that "the State's proffer merely repeated Odom's arrest report," and that the State chose not to attach exhibits or supporting documentation to its detention petition. Odom points to the State's conduct at the September 28 hearing on his continued detention as further proof that the State failed to meet its burden, in that the State made no argument and chose to stand on its September 20 detention petition. Additionally, Odom alleges the circuit court failed to consider all relevant factors in imposing conditions and further failed to state its reasons for imposing EM as a condition of pretrial release. In support of his argument, Odom states that the circuit court explicitly found that Odom is not a danger and that it was never alleged that he is a flight risk. Accordingly, he contends the court failed to comply with section 5/110-5(g) of the Act. Odom thus requests that we vacate the court's order for EM and find him eligible for release without conditions, or in the alternative, that we remand for a new hearing on less restrictive conditions.

¶ 26        The State argues that it proved by clear and convincing evidence that EM was necessary and the least restrictive condition necessary, and the trial court did not abuse its discretion in determining that EM was an appropriate condition of release. Rather, considering the facts of this

9

case and Odom's prior conviction for AUUW, the court exercised its sound discretion by imposing the same condition as when Odom was released under the original criminal complaint. The State further argues it properly presented its case by proffer, as allowed under section 5/110-6.1(f)(2) of the Code.

¶ 27    We note that the parties agree that the appropriate standard of review is abuse of discretion. We likewise agree. Appeals of bail orders under Illinois Supreme Court Rule 604(c)(1) (eff. Sept. 18, 2023) have historically been reviewed using an abuse of discretion standard. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 10. An abuse of discretion occurs when the circuit court's " 'ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the circuit court.' " *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24 (quoting *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009)); see *People v. Johnson*, 2019 IL App (3d) 190582, ¶ 8. While Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023) provides a new procedure for these types of appeals, "the Act neither mandates nor suggests a different standard of review." *Inman*, 2023 IL App (4th) 230864, ¶ 11.

¶ 28    "A defendant appealing under Rule 604(h) may claim the State failed to fulfill its burden by 'clear and convincing evidence.' See Ill. S. Ct. R. 604(h)(1)(iii) (eff. Sept. 18, 2023). However, we are not reviewing the State's evidence anew." *Id.* Rather, we review the circuit court's evaluation of that evidence for an abuse of discretion, as "a court's decisions regarding whether the State proved by clear and convincing evidence that release conditions would not protect the community is inextricably linked to any decision to grant or deny pretrial release." *People v. Jones*, 2023 IL App (4th) 230837. This court will not substitute our judgment for that of the circuit court merely because we would have analyzed the appropriate factors differently. *Inman*, 2023 IL App (4th) 230864, ¶ 11.

¶ 29        Pursuant to the Code, "it is presumed that a defendant is entitled to release on personal recognizance on the condition that the defendant shall attend all required court proceedings and the defendant does not commit any criminal offense, and complies with all terms of pretrial release." 725 ILCS 5/110-2(a) (West 2022). It is the State's burden to prove by clear and convincing evidence that "no condition or combination of conditions of release would reasonably ensure the appearance of the defendant for later hearings or prevent the defendant from being charged with a subsequent felony or Class A misdemeanor." 725 ILCS 5/110-6(a) (West 2022). Upon such a showing, the trial court may order a defendant detained if the defendant is charged with a qualifying offense and the circuit court concludes the defendant poses a real and present threat to the safety of any persons or the community. 725 ILCS 5/110-6.1(a)(1-7) (West 2022). If the court finds that detention is not appropriate, it can impose additional conditions if it determines such conditions:

> "are necessary to ensure the defendant's appearance in court, ensure the defendant does not commit any criminal offense, ensure the defendant complies with all conditions of pretrial release, prevent the defendant's unlawful interference with the orderly administration of justice, or ensure compliance with the rules and procedures of problem solving courts." 725 ILCS 5/110-10(b) (West 2022).

¶ 30        Regarding EM, the Code specifically states:

> "Electronic monitoring, GPS monitoring, or home confinement can only be imposed as a condition of pretrial release if a no less restrictive condition of release or combination of less restrictive condition of release would reasonably ensure the appearance of the defendant for later hearings or protect an identifiable person or persons from imminent threat of serious physical harm." 725 ILCS 5/110-5(g) (West 2022).

Further, if EM is imposed, the court "shall set forth in the record the basis for its finding." 725 ILCS 5/110-5(h) (West 2022).

¶ 31    As detailed in its petition, the State's sole basis for requesting Odom's detention was that he "poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." It did not allege that Odom has a "high likelihood of willful flight to avoid prosecution." In fact, at the hearing on its petition, defense counsel stated that Odom is "not a flight risk." The court responded, "I don't think they're alleging that, is that right, State?" The State responded affirmatively: "[t]hat's correct, Judge, no." In its ruling denying the State's petition, the circuit court unequivocally found that "Odom has not been demonstrated to be a danger as alleged in the petition." While this ruling does not definitively preclude the possibility the court felt that Odom was a danger in some other, lesser way, it does support Odom's argument that the court did not find him to be a danger to the community. While the court's verbally stated reasoning was that it would not put Odom "on pretrial release not with a prior gun conviction," the court's written "Order After Pretrial Detention Hearing" reflected that "[t]he Court finds that no less restrictive condition of release or combination of less restrictive condition of release would reasonably ensure the appearance of the defendant for later hearings or protect an identifiable person or persons from imminent threat of serious physical harm." Furthermore, section 5/110-5(g) of the Code specifically enumerates that EM can only be imposed if necessary to (1) ensure the defendant's appearance for later hearings or (2) protect an *identifiable* person from imminent threat of serious physical harm. 725 ILCS 5/110-5(g) (West 2022). As the statute is drafted, it appears to this court that the circuit court is restricted from imposing EM as a condition of pretrial release unless one of the two above conditions is met.

¶ 32    It is clear from the State's arguments that it believed Odom posed a real and present threat to the safety of the *community*. However, neither the State nor the court asserted, at any point, that

Odom posed an imminent threat of serious physical harm to any *identifiable* person. Likewise, the State never argued nor offered any evidence that Odom was a flight risk or that it believed Odom would not appear for further court proceedings. Following from these observations, we can infer that the court did not impose EM because Odom posed a safety threat to any *identifiable* person or because he posed a danger to the community but rather because it believed that no less restrictive means would ensure Odom's appearance at later hearings. As the State neither alleged that Odom needed restrictive conditions to ensure his continued presence in court nor proffered any evidence supporting such, we cannot say the State proved by clear and convincing evidence a premise it never argued. Further, the circuit court failed to explicitly set forth in the record the basis for its finding that the imposition of EM was necessary, as mandated by section 5/110-5(h) of the Code. 725 ILCS 5/110-5(h) (West 2022). The circuit court did not comport with the plain language of the statute as drafted when it imposed EM as a condition of release.

¶ 33                                    III. CONCLUSION

¶ 34         We find that the trial court did not err in failing to hold a hearing within 48 hours of Odom's detention due to his EM ineligibility. We further hold that the court did not improperly consider the evidence the State presented at the hearing on its petition, where that information would have been elicited at the pretrial detention hearing irrespective of the State's filing. Following a thorough review of the record on appeal, for the reasons stated, we reverse the trial court's order imposing EM and remand the cause with directions for the circuit court to promptly set a new detention hearing and conduct further proceedings consistent with this order. During the pendency of the trial court's receipt of this court's mandate and the detention hearing, the circuit court retains the discretion to detain or release Odom. See 725 ILCS 5/110-6/1(c)(2) (West 2022). The mandate in this case shall issue immediately. See *People v. Gil*, 2019 IL App (1st) 192419, ¶ 21.

¶ 35         Reversed and remanded with directions.